4 U.S. 8
 4 Dall. 8
 1 L.Ed. 718
 TURNER, administrator of Stanley, plaintiff in error,
v.
The President, Directors and Company of the BANK OF
NORTH AMERICA, defendants.
 August Term, 1799.
 
 Jurisdiction—Parties.
 ERROR from the Circuit Court of North Carolina. This was an action upon a promissory note, made in Philadelphia, by Stanley, the intestate, in favor of Biddle & Co., and indorsed by Biddle & Co. to the Bank of North America.
 The declaration (which contained only a count upon the note itself) stated, that the president and directors of the bank were citizens of the state of Pennsylvania; and that Turner, the administrator, and Stanley, the intstate, were citizens of the state of North Carolina; but of Biddle & Co., the payees and indorsers of the note, there was no other designation upon the record, than "that they used trade and merchandise in partnership together, at Philadelphia or North Carolina."
 The error assigned and insisted upon, to wit, an insufficient description of Biddle & Co., was founded on that part of the 11th section of the judicial act (1 U.S.Stat. 79) which declares, that no district or circuit court "shall have cognisance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court, to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange."
 Ingersoll, for the plaintiff in error, argued, that unless it was averred upon the record, that the original parties to the note, as well as the parties to the suit, were of different states, or one a citizen, and the other an alien, it could not judicially appear, that the circuit court had jurisdiction of the cause. Though the federal courts are not to be regarded as inferior courts, they are courts of a limited jurisdiction. The jurisdiction of the state courts is general; but the jurisdiction of the federal courts is special, and in the nature of an exception from the general jurisdiction of the state courts. That the parties are citizens of different states, is one ground for the exception; and so far as respects the immediate parties to the suit, the ground for the exception sufficiently appears upon the record. But if an action is brought by the indorsee of a promissory note, he cannot have the benefit of the exception, unless he shows that his indorser, as well as himself, was entitled to resort to a federal tribunal. Congress knew, that the English courts have amplified their jurisdiction, through the medium of legal fictions; and it was readily foreseen, that by the means of a colorable assignment to an alien, or to the citizen of another state, every controversy arising upon negotiable paper might be drawn into the federal courts. Hence, the original character of the debt is declared to be the exclusive test of jurisdiction, in an action to recover it. Unless the original character of the note furnished a subject of federal jurisdiction, it is emphatically declared, that "no district or circuit court shall have cognisance of the suit;" and a court of special jurisdiction cannot take cognisance of the suit, unless the case judicially appears by the record to be within its jurisdiction. Lord Coningsby's Case, 9 Mod. 95. So, wherever a party takes advantage of a clause in a statute, to which a proviso is attached, he must not only bring his case within the general clause, but show that it is not affected by the proviso. 5 Bac. Abr. 666; Plowd. 410; Ld. Raym.
 Nor is the present too late a period to take advantage of the defect. Silence, inadvertence of consent cannot give jurisdiction, where the law denies it. In Bingham v. Cabot, 3 Dall. 382, the ground of jurisdiction was more strongly laid; and yet a similar defect was successfully assigned for error.
 Rawle, for the defendant in error.—It is not intended to controvert the general proposition, that where a suit is brought before an inferior court the circumstances that gave it jurisdiction must be set forth on the record; and if they are omitted, it may be taken advantage of upon a writ or error. But the circuit court is not, in technical language or intendment, an inferior court; and this consideration alone destroys the application of most of the English authorities. It is, then, to be remarked, that the judicial power is the grant of the constitution; and congress can no more limit, than enlarge the constitutional grant. In the second section of the third article, the constitution contemplates the parties to the controversy is "between citizens of different states," the judicial power of the United States expressly extends to it.(a) By the opposite construction however, congress has imposed a limitation upon the judicial power, not warranted by the constitution, when, without regard to the immediate parties to the controversy, the law excepts from the cognisance of the federal courts, suits upon promissory notes, which, by assignment, have placed the immediate parties in the relation of citizens of different states. If the circuit court is not an inferior, neither is it, in the sense asserted, a limited jurisdiction, but it is a court of general jurisdiction, having some cases expressly excepted from its cognisance. It may be compared to the king's bench in England, from whose general jurisdiction is excepted the cognisance of cases, belonging to the counties Palatine. Carth. 11, 12, 354; 1 Saund. 73; 2 Mod. 71-3. As to such courts, it is sufficient, if it appears to the appellate authority, that, from the subject-matter, the court below might have jurisdiction; and at all events, it would be too late, on a writ of error, to take the exception—an objection not suggested in Bingham v. Cabot. Then, here, the parties are stated to be citizens of different states; the place was not exempt from federal jurisdiction; and the nature of the controversy did not, of itself, deprive the circuit court of its general cognisance of suits between citizens of different states.
 The Chief Justice delivered the opinion of the Court, in the following terms:
 
 
 1
 ELLSWORTH, Chief Justice.—
 
 
 2
 The action below was brought by the president and directors of the Bank of North America, who
 
 
 
 (a)
 ELLSWORTH, Chief Justice.—How far is it meant to carry this argument? Will it be affirmed, that in every case, to which the judicial power of the United States extends, the federal courts may exercise a jurisdiction, without the intervention of the legislature, to distribute and regulate the power?
 
 
 
 3
 CRASE, Justice.—The notion has frequently been entertained, that the federal courts derive their judicial power immediately from the constitution; but the political truth is that the disposal of the judicial power (except in a few specified instances) belongs to congress. If congress has given the power to this court, we possess it, not otherwise: and if congress has not given the power to us, or to any other court, it still remains at the legislative disposal. Besides, congress is not bound, and it would, perhaps, be inexpedient, to enlarge the jurisdiction of the federal courts, to every subject, in every form, which the constitution might warrant. are well described to be citizens of Pennsylvania, against Turner and others, who are well described to be citizens of North Carolina, upon a promissory note, made by the defendant, payable to Biddle & Co., and which, by assignment, became the property of the plaintiffs. Biddle & Co., are no otherwise described, than as "using trade and merchandise in partnership together," at Philadelphia or North Carolina: and judgment was for the plaintiff. The error assigned, the only one insisted on, is, that it does not appear from the record, that Biddle & Co., the promissees, or any of them, are citizens of a state other than that of North Carolina, or aliens.
 
 
 4
 A circuit court, though an inferior court, in the language of the constitution, is not so in the language of the common law; nor are its proceedings subject to the scrutiny of those narrow rules, which the caution or jealousy of the courts at Westminister long applied to courts of that denomination; but are entitled to as liberal intendments or presumptions in favor of their regularity, as those of any supreme court. A circuit court, however, is of limited jurisdiction: and has cognisance, not of cases generally, but only of a few specially circumstanced, amounting to a small proportion of the cases which an unlimited jurisdiction would embrace. And the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction, until the contrary appears. This renders it necessary, inasmuch as the proceedings of no court can be deemed valid, further than its jurisdiction appears, or can be presumed, to set forth upon the record of a circuit court, the facts or circumstances which give jurisdiction, either expressly, or in such manner as to render them certain by legal intendment. Among those circumstances, it is necessary, where the defendant appears to be a citizen of one state, to show that the plaintiff is a citizen of some other state, or an alien; or if (as in the present case) the suit be upon a promissory note, by an assignee, to show that the original promisee is so: for by a special provision of the statute, it is his description, as well as that of the assignee, which effectuages jurisdiction.
 
 
 5
 But here, the description given of the promisee only is, that "he used trade" at Philadelphia or North Carolina; which, taking either place for that where he used trade, contains no averment that he was a citizen of a state, other than that of North Carolina, or an alien; nor anything which, by legal intendment, can amount to such averment. We must, therefore, say that there is error. It is exceedingly to be regretted, that exceptions which might be taken in abatement, and often cured in a moment, should be reserved to the last stage of a suit, to destroy its fruits.
 
 
 6
 Judgment reversed.
 
 
 
 [1]
 Mollan v. Torrence, 9 Wheat. 587; Bradley v. Rhiner, 8 Wall. 393; Morgan v. Gay, 19 Id. 81.