## PORTAGE CITY WATER CO. v. CITY OF PORTAGE.

### (Circuit Court, W. D. Wisconsin. July 2, 1900.)

### No. 18.

1. JURISDICTION OF FEDERAL COURTS—ASSIGNEE OF CHOSE IN ACTION—CONSTRUCTION OF STATUTE.

Under the provision of section 1 of the judiciary act of 1887-88, that no federal court shall have cognizance of a suit to recover the contents of any promissory note or other chose in action "in favor of any assignee or any subsequent holder. * * * unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made," if the requisite diversity of citizenship existed between the original parties to a note or contract, and a suit between them might have been maintained thereon in a federal court, any subsequent assignee may maintain such action. provided he is also a resident of a state other than that in which the defendant resides; and it is immaterial that an intermediate assignee was a resident of the same state.

2. SAME—WHAT CONSTITUTES AN ASSIGNMENT.

A sale and conveyance under a decree of foreclosure of a waterworks plant, together with the rights of all the parties in the franchise and contract under which it was constructed, does not operate merely as an assignment of the contract, within the meaning of the provision of the judiciary act of 1887-88, which denies to federal courts jurisdiction of a suit by an assignee on a chose in action where such suit could not have been maintained if no assignment or transfer had been made; and such provision does not affect the right of the purchaser to maintain a suit in a federal court to enforce rights under such contract, where the requisite diversity of citizenship exists between the parties. In such case the conveyance vests the purchaser with rights in real property, to the full enjoyment of which the enforcement of the contract is a necessary incident.

On Demurrer to Complaint for Want of Jurisdiction.

Hume, Oellerich & Jackson, for plaintiff.

C. A. Fowler, City Atty., and Jones & Stevens, for defendant.

BUNN, District Judge. The demurrer to the complaint raises an important and interesting question of jurisdiction, under that clause of the jurisdiction act of 1887-88 providing as follows:

"Nor shall any circuit or district court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action, in favor of any assignee or any subsequent holder * * * unless such suit might have been prosecuted in such court to recover the said contents, if no assignment or transfer had been made." 25 Stat. 433, 434, c. 866, § 1.

It appears by the complaint that there was a contract or franchise granted by the city of Portage, Wis., the defendant, to three citizens of the state of New York, for the purpose of constructing a system of waterworks for the city. These New York men who held the contract assigned the same to the Portage City Waterworks Company, a corporation presumably organized under the laws of Wisconsin. Afterwards the plant constructed by the corporation went into the hands of a receiver of this court in a suit by the bondholders to foreclose. The action is brought by the Portage City Water Company, a corporation organized and existing under the laws of the state of Maine, and a citizen of that state, against the city of Portage, a municipal

102 F.—49

corporation of Wisconsin, to recover the sum of $3,457.50, with interest, being the aggregate of several sums claimed to be due upon a contract for supplying the city with water. The complaint alleges: That on April 8, 1887, the defendant passed an ordinance authorizing J. F. Moffett, H. C. Hodgkins, and J. V. Clarke, all citizens of the state of New York, and doing business under the firm name of Moffett, Hodgkins & Clarke, to construct, maintain, and operate a system of waterworks in the defendant city for the purpose of supplying the city and its inhabitants with water. That said ordinance was duly passed and accepted by Moffett, Hodgkins & Clarke, and became and is a binding contract. That Moffett, Hodgkins & Clarke proceeded with the work of putting in said waterworks plant pursuant to the contract, and began to erect and construct all necessary basins, filtering galleries, reservoirs, water towers, pump houses, buildings, engines, machinery, mains, pipes, etc., necessary for supplying the city with water. That thereafter, in the year 1887, they sold and assigned to the Portage City Waterworks Company all their right and title under the contract. The citizenship of the Portage City Waterworks Company is not averred, but presumably it was a Wisconsin corporation. By this assignment all the interest of said Moffett, Hodgkins & Clarke in the contract passed to the said last-named company. That said Portage City Waterworks Company went on and completed the waterworks as contemplated by the said contract and ordinance. That afterwards, in April, 1895, an action was commenced in this court by the owners of bonds issued by the Portage City Waterworks Company to foreclose a mortgage upon the water plant, securing payment of the bonds. That under that foreclosure one Warren G. Maxcy was appointed receiver of, and became vested with, the property. That in January, 1897, a sale of the plant was made by the marshal under the foreclosure proceedings, wherein one Theodore C. Woodbury purchased and became the owner of the plant and contract with the city. That this sale was confirmed by the court. That said Woodbury was then, and still is, a citizen of the state of Maine, and entitled to bring this action. That afterwards, on January 27, 1897, said Woodbury sold and transferred to the plaintiff, also a citizen of the state of Maine, all his interest in and to the contract and the waterworks plant constructed under it by successive owners, and that the plaintiff is now the lawful owner and holder of the same, and entitled to maintain the action.

Under this state of facts it is claimed by the defendant that under the above clause of the jurisdiction act this court has no jurisdiction, in that, though the requisite citizenship exists between the plaintiff and defendant, the transfer to the Portage City Waterworks Company, who were citizens of Wisconsin, prevented any subsequent holder, though a citizen of another state, from maintaining the action in the federal court, and that the case comes within the prohibition and exception of the statute. It is true that the Portage City Waterworks Company, as well as the receiver, was a citizen of Wisconsin, with the defendant, but the original contracting parties, who owned the franchise and contract, were citizens of New York, and competent to sue in the federal court. This being the case, the assignee of the

receiver, who was a citizen of Maine, and who purchased the property, could also bring action in the federal court. The statute says the court shall not have cognizance in favor of any assignee unless the suit might have been prosecuted in such court if no assignment had been made. Clearly, if no assignment had been made of the contract, the original contractees, who were citizens of New York, could have come into the federal court to sue upon the contract. That being the case, there is no reason why the present holders of the contract may not, so long as the requisite citizenship exists to give the federal court jurisdiction. This statute, or the ones of a like character preceding it, has been often before the courts for construction; and it has never yet been held, either by the supreme court, or, I think, by any circuit court, that if these conditions existed the action could not be maintained, because the plaintiff must trace his title through some intermediate assignee, who could not have maintained the action. All the cases go upon the assumption that the intention of the law was to deny jurisdiction only in case the original payee or contractee was a citizen of the same state with the defendant, and so could not maintain the action in the United States courts. If the requisite citizenship existed between the original parties to the note or contract, so that suit might be maintained by the payee in the federal court, any subsequent holder could maintain the action, provided he was also a resident of a state other than that where the party defendant resided. This, I think, is as far as the cases go. The purpose of the law was to prevent colorable assignments for the purpose of giving jurisdiction by payees or contractees who were citizens of the same state with the other contracting party. But this purpose does not hold when by the original contract the suit might be brought in the federal court.

The statute has been many times before the supreme court under a similar clause of the original judiciary act, as well as under the acts of 1875 and 1887-88. The first case was that of Turner v. Bank, 4 Dall. 8. 1 L. Ed. 718, opinion by Chief Justice Ellsworth, in 1799. The action was brought by the bank, who was described as a citizen of Pennsylvania, against Turner and others, who were citizens of North Carolina, upon a note made by defendant, payable to Biddle & Co., and which was assigned to the plaintiff. There was judgment for the plaintiff, which was reversed because it nowhere appeared that Biddle & Co., who were the original payees, could have maintained the action. In Montalet v. Murray, 4 Cranch, 46, 2 L. Ed. 545, precisely the same question was again before the supreme court; and the court held (Chief Justice Marshall delivering the opinion) that, if it do not appear upon the record that a suit might have been maintained in the courts of the United States between the original parties to a promissory note, no suit can be maintained upon it in those courts by any subsequent holder. In Gibson v. Chew, 16 Pet. 315, 10 L. Ed. 977, the same question was again before the court, and in an opinion by Justice Wayne the same ruling was made. See, also, Coffee v. Bank, 13 How. 183, 14 L. Ed. 105, where the doctrine is again reaffirmed. The question was again before the court in Parker v. Ormsby, 141 U. S. 81, 11 Sup. Ct. 912, 35 L. Ed. 654, the opinion

reviewing the previous cases. The doctrine, as there laid down by the court, speaking through Mr. Justice Harlan, is as follows:

"It was settled by many decisions under the act of 1789 that a circuit court of the United States had no jurisdiction of a suit brought against the maker by the assignee of a promissory note payable to order, unless it appeared affirmatively that it could have been maintained in that court in the name of the original payee."

There is no suggestion in the case of any other condition, as that the action must be one which might have been maintained by any of the intermediate assignees and holders, as well as the original payee. After citing the above authorities, and Morgan's Ex'r v. Gay, 19 Wall. 81, 22 L. Ed. 100, the court proceeds to say:

"The authorities we have cited are conclusive against the right of the plaintiff to maintain this suit in the court below, unless it appeared that the original payee, Lamb, could have maintained a suit in that court upon the note and coupons."

One of these cases so cited upon the one question decided was that of Morgan's Ex'r v. Gay, 19 Wall. 81, 22 L. Ed. 100, which is mainly relied upon in the case at bar for authority for a wholly different proposition. But that case, when properly considered, will not be found to be in conflict with the other cases cited. It is authority for just what it was cited for by Mr. Justice Harlan; and that is, in order to give jurisdiction to the United States circuit court, it should appear of record that the original payee might have maintained the action if no assignment had been made. The case was properly decided on that ground, and is in line with all the other cases; but Mr. Justice Strong, in writing the opinion, went further than was necessary in giving a reason for the decision, that the court had no jurisdiction, because there was no averment in the petition of the citizenship of the payees of the bills or that of the subsequent indorsees. No doubt, the real ground of the decision was the same as in all the other cases, that to give jurisdiction to the federal court it should appear that the original payee named in the note or contract was a citizen of a state other than that of the defendant, and so in a position to maintain the action if no assignment had been made. That had always been the ruling of the supreme court as well as the circuit courts from the earliest times, under the act of 1789. The exact question in issue in the case at bar was twice adjudged in the United States circuit court,—first in 1830, in the case of Wilson v. Fisher, Baldw. 133, Fed. Cas. No. 17,803, where a citizen of New York had obtained a judgment against a citizen of Pennsylvania in a court of that state, and which the plaintiff assigned to another citizen of Pennsylvania, whose executors assigned it to the complainant, who was an alien. Held, that he could sustain a bill in equity in the United States circuit court notwithstanding the intermediate assignment to a citizen of Pennsylvania. The decision, which was by Hopkinson, J., seems to me to be well reasoned and well founded in principle. The court says:

"The suit cannot be maintained here unless it might have been prosecuted here if no assignment had been made; that is, as we understand it, if it had remained with the original parties to the transaction, contract, or cause of ac-

tion. The law does not declare that no assignee shall prosecute his suit in this court unless his assignor might have done so. but unless a recovery of the right claimed might have been had in this court if no assignment of it had been made; and, of course, in every case in which a recovery might have been prosecuted in the courts of the United States if no assignment had been made, it may be so prosecuted after such assignment to a party competent to sue here. The question now under consideration has received, as far as we can find, no direct adjudication, but the clause of the act of congress under which it arises has several times come under the notice of the courts. In the case of Sere v. Pitot, 6 Cranch, 332, 3 L. Ed. 240, the question turned on a distinction set up between an assignment made by operation of law and one by the act of the party, the plaintiff claiming by virtue of a general assignment of the effects of an insolvent. The chief justice states the objection to be 'that the suit was brought by the assignees of a chose in action, in a case where it could not have been prosecuted if no assignment had been made.' The terms in which the objection is taken and stated show a disposition to keep to the words of the law, and to oust the jurisdiction only in cases falling clearly, if not literally, within them. In Montalet v. Murray, 4 Cranch, 46, 2 L. Ed. 545, we come still nearer to the construction we have adopted. It is there said, 'If it did not appear upon the record that the character of the original parties would support the prosecution, the objection is fatal.' · The court here seem to refer the question of jurisdiction to the character of the original parties to the contract or chose in action for the recovery of which the suit is prosecuted, without regarding any subsequent or intermediate holder, provided that the plaintiff himself is qualified to sue. The provisions of the act of congress are met if we have good parties on the record, and the right claimed to be recovered might have been prosecuted here if no assignment of it had been made. The parties to the contract or chose in action and the parties to the suit are looked to by the act of congress, and we may suggest many doubts and difficulties that would arise if the character of the various persons through whose hands the chose in action might have passed are to be inquired into. So far as we may speculate upon the intention and policy of the legislature in making this enactment, they will be fully answered by this construction."

The other case was Milledollar v. Bell, 2 Wall. Jr. 334, Fed. Cas. No. 9,549, decided in 1854, where the same question was decided by the circuit court in an opinion by Judge Grier, one of the associate justices of the supreme court. The court, in its opinion, says:

"The bill avers that Milledollar, the mortgagee, is a citizen of New York. He could, therefore, have brought his suit in this court for the contents of the bond and mortgage 'if no assignment had been made.' And, to sustain the jurisdiction of the court in his case, it would have been necessary only to aver that the mortgagors were citizens of New Jersey at the time suit was brought. The complainant's case is therefore within the strict letter of the law: nor can we discover anything in the spirit, equity, or policy of the act, or in adjudged cases, which would compel us to give it a construction such as the defendant asks. The statute does not take from the assignee of a chose in action his right to sue in the courts of the United States, unless his immediate assignor could have sustained such action; but only in case the court could have had no jurisdiction, as between the original parties to the instrument, if no assignment had been made. The situation or rights of temporary intermediate assignees, holders, or indorsers enter not into the conditions of the case. * * * We are of opinion, therefore, that as this bill shows that the complainant is a citizen of New York, and the defendants citizens of New Jersey, at the time the bill was filed, and that the original contractor or mortgagee is a citizen of the same state, and could, therefore, have sued these defendants at the time this bill was filed, in the circuit court of New Jersey, 'if no assignment had been made.' this court has jurisdiction of the case, and the citizenship of the intermediate holders, owners, or assignees is immaterial, and need not be averred."

These cases are not referred to in Morgan's Ex'r v. Gay, and there could have been no intention of overruling them. On the contrary, I

think the decisions of the supreme court are fully in accord with these early decisions of the circuit court. This provision of the statute is an exception and qualification of the general rule governing the jurisdiction in suits between citizens of different states, and should not be extended by construction.

But there is another—to my mind, cogent—reason why the provision of the statute in question has no application to a case like this. Allowing that such a contract as was made between Portage City and Moffett, Hodgkins & Clarke might fall within the purview of the statute which designates promissory notes and other choses in action, it does not follow that after the waterworks plant was erected, 10 miles of main laid, expensive buildings constructed, and other appliances created to facilitate the operation of a watering plant for the use of the city, the real estate which was the subject of the foreclosure would fall within that designation. To raise funds for the completion of the plant, the Portage City Waterworks Company issued its bonds to the Farmers' Loan & Trust Company, a corporation of New York, to the amount of $150,000, secured by a mortgage upon the entire plant and franchise. It was to foreclose this mortgage that suit was commenced by the Farmers' Loan & Trust Company, and it was under this foreclosure that the property came into the hands of the receiver of this court, and was sold under the order of the court, and bid in by Theodore C. Woodbury, a citizen of the state of Maine. The foreclosure was a real-estate foreclosure. Of course, the defendant in that suit had an equity of redemption in the property, but the entire beneficial interest was already in the Farmers' Loan & Trust Company by virtue of the bonds and trust deed. The conveyance by the marshal under the receivership proceedings and the order of the court was a conveyance of the entire interest in the plant and franchise,—as well that of the defendant the Portage City Waterworks Company as that of the bondholders,—and can hardly be considered merely as an assignment of the original contract under which the plant was erected. It was a conveyance of real estate. The law required the property to be sold at auction to the highest bidder. Theodore C. Woodbury, who was a citizen of Maine, made the best bid, and the plant was conveyed to him by the deed of the marshal, and the sale confirmed by the court. Woodbury transferred the property and franchise to the plaintiff, also a citizen of Maine. There does not seem to be any likeness in the case to that of the assignee of a promissory note or other chose in action. The receiver, while the property was in his possession could, no doubt, have brought a similar action in this court, and I see no reason, upon any just ground, why the plaintiff may not. The demurrer to the jurisdiction of the court is overruled, and the defendant given until the first Monday in August next to answer the complaint.