### FARR et al. v. HOBE-PETERS LAND CO.

(Circuit Court of Appeals, Seventh Circuit. October 18, 1910. Rehearing Denied April 11, 1911.)

No. 1,634.

1. COURTS (§ 312*)—JURISDICTION OF FEDERAL COURTS—SUITS BY ASSIGNEE.

A suit to quiet title to land and for the cancellation of tax deeds under which defendants claim, where complainant sues as assignee of a mortgage and of a certificate of purchase in foreclosure proceedings thereunder which admittedly has not ripened into the legal title, is a suit to recover the contents of such instruments as choses in action, and under Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), cannot be maintained in a federal Circuit Court, unless a suit might have been prosecuted thereon in such court if no assignment had been made.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 865–875; Dec. Dig. § 312.*]

2. COURTS (§ 312*)—JURISDICTION OF FEDERAL COURTS—SUITS BY ASSIGNEE.

Under Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), which provides that a federal court shall not "have cognizance of any suit * * * to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder * * * unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made," the limitation does not extend to intermediate assignees. and it is sufficient to sustain jurisdiction where it is shown that the original holder of the chose in action, as well as plaintiff and his immediate assignor, might have prosecuted the suit in that court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 865–875; Dec. Dig. § 312.*]

3. COURTS (§ 263*)—FEDERAL COURTS—EQUITY JURISDICTION—REMEDIES GIVEN BY STATE STATUTES.

A state statute authorizing the maintenance of a suit to quiet title, although the plaintiff is out of possession, is an enlargement of equitable rights which may be administered by a federal court, and, having jurisdiction to entertain such an action, the federal court may determine any question arising therein which could be determined by any state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. § 263.*

Jurisdiction of federal courts as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. **JUDGMENT (§ 683\*)—PERSONS CONCLUDED—TAX FORECLOSURE SUIT—WISCONSIN STATUTE.**

Under St. Wis. 1898, §§ 1197–1210, providing for suits to foreclose tax deeds, and which provides (section 1206) that the judgment shall forever bar the defendants and all others claiming under them after the filing of the lis pendens notice from all right, title, and interest in the lands, and the general lis pendens statute (St. Wis. 1898, § 3187), which under the decisions of the state Supreme Court is also applicable to such tax foreclosure suits, and provides that the filing of a lis pendens shall be constructive notice to a purchaser or incumbrancer affected by the suit, and that "every purchaser or incumbrancer whose conveyance or incumbrance is not recorded or filed shall be deemed a subsequent purchaser or incumbrancer and shall be bound by the proceedings to the same extent and in the same manner as if he were a party thereto," the judgment in a tax foreclosure suit to which a mortgagee was made a party concludes an assignee of the mortgage, although his assignment antedated the suit, where it was not recorded, at least where the plaintiff had no notice of the assignment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1206; Dec. Dig. § 683.\*]

5. **JUDGMENT (§ 957\*)—PERSONS CONCLUDED—TAX FORECLOSURE SUIT.**

Evidence considered, and *held* insufficient to charge the plaintiff in a suit to foreclose tax deeds under St. Wis. 1898, §§ 1197–1210, with notice of an unrecorded assignment of a mortgage on the lands so as to render the judgment impeachable by a subsequent assignee where the mortgagee was made a party.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 957.\*]

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

Suit in equity by the Hobe-Peters Land Company against J. R. Farr, Victoria Farr, Daniel Bjorklund, Emma Bjorklund, E. A. Westlin, H. A. Lunt, Fred Bolander, Fred Anderson, Nels Dahl, Herman Dahl, and Mrs. Fred Bolander. Decree for complainant (170 Fed. 644), and defendants appeal. Reversed.

The decree of the Circuit Court from which this appeal is brought, grants relief in equity in favor of Hobe-Peters Land Company, complainant, and against the appellants, defendants therein, pursuant to a bill filed, to establish title in the complainant to numerous tracts of land in Wisconsin, and "cancel and annul of record" various tax deeds, together with a judgment thereunder rendered in a state court, held by the appellants, as claimants of title to the lands in controversy. The appellee-complainant is a Minnesota corporation, and its alleged interest in the lands is that of mortgagee, derived through various assignments of such interest in succession (including an unperfected statutory foreclosure), without possession of any portion of such lands; and the appellants are citizens of Wisconsin, in possession (respectively) of certain of the lands and having made improvements thereon, while the remaining lands in suit are "vacant and unoccupied." Other facts which are deemed reviewable are stated in the opinion.

James Wickham and Frank R. Farr, for appellants.
Edward M. Smart and R. N. Van Doren, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). This case proceeded to final hearing and decree, upon the issues raised by the pleadings as to the merits of the respective claims of title, involv-

ing various complications both of law and fact, and voluminous evidence; and the main controversy thereunder, as discussed both in the opinions filed by the trial court and in the arguments on the appeal, relates to the sufficiency and effect of a judgment obtained by the appellant Farr, in the circuit court of Price county, Wis., January 21, 1901, which purports to bar, not only the mortgagor, under whom the appellee claims title, but the Minnesota Lumber Company, mortgagee and original assignor thereof, "from any and all right, title and interest in and to the lands" in suit. The proceedings resulting in such judgment were instituted under the Wisconsin statute (Wis. Stat. 1898, §§ 1197–1210), when no assignment of the mortgage in question appeared of record; and in such event it is conceded in the opinion filed below (as revised before entry of the decree) to be the established rule under the statute—and undoubtedly so settled in Warner v. Trow, 36 Wis. 195, 200—that any assignee or holders thereof were bound by such proceedings. Thus the decree upon the merits rests on the two-fold assumption, that the prima facie force of the judgment in the state court was not only impeachable in another suit and forum, but was so impeached in reference to the appellee's claim, through oral testimony which was received as tending to prove that the judgment-plaintiff was then chargeable with notice of the unrecorded assignment.

Error is assigned as well for want of equitable jurisdiction to quiet title, as sought in the bill and granted by the decree—whether the above-mentioned conclusion as to notice in fact were either supported or unsupported by the testimony—contending in substance: (a) That such relief, in favor of the appellee having no possession of the lands in suit, is beyond the chancery powers of a federal court, and that the provisions of the state statute (section 3186, Wis. Stat.) vesting in state courts equity powers to that end are inoperative for extension of the federal powers; and if so applicable in any sense, (b) that the trial court was bound by the established law of Wisconsin, in reference to the above-mentioned tax title judgment of the state court, which limits applications by third parties for relief from its prima facie force, to the court wherein the judgment was obtained.

Jurisdiction of the case, however, is challenged upon another ground—plainly presented, both by bill and evidence and by the assignments of error and arguments upon the appeal—raising the fundamental inquiry, whether the complainant, as assignee of the claim in controversy, can sue for its enforcement in the federal court. The solution is not free from difficulty under the seeming conflict in various opinions to be mentioned, but we must be prepared to overrule this objection before either of the other questions is open to review.

1. The bill is for equitable relief, founded alone upon complainant's alleged equities in the lands, as assignee of a mortgage interest, derived through a succession of assignments from the original mortgagee, including (as averred) unperfected foreclosure proceedings by one of its assignors; and the relief sought and granted was to have title adjudicated in its favor, as against the defendants, and to clear the title of adverse claims recorded in favor of the defendants. Fed-

eral cognizance of the suit is invoked solely on the ground of diversity of citizenship under the averments (a) that both the complainant and the original mortgagee were and are citizens of Minnesota; (b) complainant's immediate assignor is a citizen of Illinois; and (c) the defendants are all citizens of Wisconsin. But the bill further avers that one of the assignees of the mortgage, through whom the complainant derives title (alleged to be an assignment in trust), is and was a citizen of Wisconsin; and the evidence proves another intermediate holder of the mortgage to be a Wisconsin corporation. Thus the question directly arises: Can the suit be entertained under the limitation imposed by the present statute—section 629 and amendments—as carried forward from the eleventh section of the judiciary act of 1789? Omitting exceptions not involved here, this provision reads that the federal court shall not "have cognizance of any suit  *  *  * to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder  *  *  * unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

The facts in reference to the source of the complainant's interest in the mortgage are as follows: In 1892, one Holmes (whose citizenship does not appear) executed a mortgage covering about 7,000 acres of land in Wisconsin, owned by him, in favor of Minnesota Lumber Company, a Minnesota corporation, as mortgagee, securing notes made by Holmes. In 1899, one Murphy completed a purchase of the notes and mortgage for himself and one Craig, and the mortgagee indorsed on the mortgage an assignment in blank, leaving the name of the assignees to be inserted at their option; and it was agreed between Murphy and Craig—citizens, respectively, of Colorado and Illinois, as alleged in the bill—that Craig, who advanced the purchase money, should have one half of the mortgage interest and hold the other half as security for payment of Murphy's half interest, and that Murphy was to act for both in selling the lands. Murphy held the instruments, contracted to sell to Ogema Lumber Company, a Wisconsin corporation, a portion of the lands, and subsequently, without notice to Craig, delivered the notes and mortgage to that corporation, to secure both his personal indebtedness to it and the contract of sale above mentioned. In 1901 Craig and Ogema Lumber Company joined in an agreement (which fixed their interests respectively) to have the mortgage assigned to one Barry, a citizen of Wisconsin, in trust for foreclosure and sale and to make division of such interests. Murphy then stipulated that Craig's name be inserted in the blank assignment as the assignee, and upon such insertion the assignment was recorded; and Craig executed an assignment to Barry, which was also recorded. Barry commenced foreclosure by advertisement, as assignee, made purported sale of the lands to Craig as purchaser, and delivered his certificate of such sale December 23, 1901. On February 20, 1902, Craig quitclaimed to Hobe-Peters Land Company, the complainant, and the present bill was filed May 15, 1902, while the statutory period for redemption from the alleged foreclosure extended one year from the sale.

[1] Thus no legal title to the lands had vested thereunder—whether the foreclosure was of prima facie validity, or was void for want of the statutory notice, as contended respectively—but the complainant had acquired, as assignee thereunder, all equities which then existed under the mortgage, without other rights in the premises; and it is unquestionable that the suit is for the enforcement of alleged rights conferred by the instruments referred to, as choses in action, and is subject to the foregoing jurisdictional provision, as uniformly construed by the authorities. Corbin v. County of Black Hawk, 105 U. S. 659, 665, 26 L. Ed. 1136; Shoecraft v. Bloxham, 124 U. S. 730, 735, 8 Sup. Ct. 686, 31 L. Ed. 574; Plant Inv. Co. v. Key West Ry., 152 U. S. 71, 76, 14 Sup. Ct. 483, 38 L. Ed. 358; New Orleans v. Benjamin, 153 U. S. 411, 432, 14 Sup. Ct. 905, 38 L. Ed. 764; Kolze v. Hoadley, 200 U. S. 76, 83, 26 Sup. Ct. 220, 50 L. Ed. 377.

[2] The test of limitation, therefore, rests on the interpretation of the clause against suit by the assignee, unless it "might have been prosecuted in such court * * * if no assignment or transfer had been made." Both the mortgagee and the ultimate assignee, Craig, who transferred the interest to complainant, were citizens of another state and entitled to sue in the federal court, so the test is narrowed to the inquiry whether the restriction includes, as well, the intervening assignees, through whom title is traced. If such assignees are included, no doubt is entertainable that both of the above-mentioned Wisconsin holders of the mortgage must be so designated. The fact that the assignment to Barry was in trust cannot prevent its application (as contended), for the reason that the citizenship of a trustee is alike controlling of the right to sue (Dodge v. Tulleys, 144 U. S. 451, 455, 12 Sup. Ct. 728, 36 L. Ed. 501; 1 Foster, Fed. Prac. § 19); and the transfer to the Ogema Lumber Company of the instruments (inclusive of the blank assignment) was not only operative as the assignment of an interest in the mortgage, but was expressly so recognized by all other parties in interest, under the arrangement with Barry.

Decisions of the Supreme Court are numerous in the interpretation of various phases of this provision, and some of the cases have involved construction of the terms above quoted, but we believe no decision of that tribunal, cited by counsel or examined in our research, settles the answer to the present inquiry; nor does aid thereto appear in any ruling of a Circuit Court of Appeals brought to our attention. The cases, however, may well be classified under two different lines of definition—one applying the limitation alone to the original payee or assignor and the other to subsequent assignments of the bill or chose in action—and we are of opinion that neither line of cases in the Supreme Court can be considered decisive of the present inquiry, so that its solution thereunder remains at large.

The cases relied upon to defeat jurisdiction are: Mollan v. Torrance, 9 Wheat. 537, 538, 6 L. Ed. 154; Morgan's Executor v. Gay, 19 Wall. 81, 82, 22 L. Ed. 100; Metcalf v. Watertown, 128 U. S. 586, 588, 9 Sup. Ct. 173, 32 L. Ed. 543. In Mollan v. Torrance jurisdiction was denied of suit by New York plaintiffs, holders of a promis-

sory note, against a Mississippi defendant, as "remote indorser" thereof, for recovery upon the indorsement; and the opinion by Chief . Justice Marshall states the ground of such ruling to be that plaintiffs "trace their title through an intermediate indorser, without showing that this intermediate indorser could have sustained his action against the defendant in the courts of the United States." It distinguishes the case from Young v. Bryan, 6 Wheat. 146, 5 L. Ed. 228, upholding like suit against an immediate indorser, as "a new contract entered into between indorser and indorsee" and "not a claim through an assignment," and refers only to the fact that the declaration is "silent respecting the citizenship or residence of Lowrie, the immediate indorser" of plaintiffs. Moreover, the opinion states that Turner v. Bank of North America, 4 Dall. 8, 1 L. Ed. 718, had decided against jurisdiction, while that case does not appear to be directly applicable. Its ruling, however, is plainly limited, both by facts and language, to the failure to show right of suit in plaintiffs' "immediate indorser," while the instant case meets that requirement in the averment and proof that its assignor, Craig, was an Illinois citizen.

In Morgan's Executor v. Gay the suit was by the holder of three bills of exchange for recovery against the executor of the maker. "Two of the bills were indorsed by the payees, and the third by its payee and by other indorsers." The plaintiff alleged that he was a citizen of Kentucky, and that the defendant was a citizen of Louisiana, where suit was brought in the federal court, "but said nothing about the citizenship of the payees of the bills, nor, in the case of that one indorsed by subsequent indorsers, of the citizenship of these." On review of the judgment in favor of plaintiff, the opinion, by Mr. Justice Strong, states: "There is no averment of the citizenship of the payees of the bills, or of the citizenship of the subsequent indorsers," and "for aught that appears in the record, they may all be citizens of Louisiana"; that Turner v. Bank of North America, 4 Dall. 8, 1 L. Ed. 718, and other cases, require not only averments of citizenship of "the parties to the suit, but also the citizenship of the payee and the indorser" to confer jurisdiction. Reversal was ordered, accordingly, with permission to amend the pleadings if jurisdictional facts could be shown. The requirement to aver the citizenship of the payee conforms to all the authorities, and the opinion mentions only "the indorser" as a further requirement, so that the ruling does not extend beyond that of Mollan v. Torrance, supra.

The case of Metcalf v. Watertown was the suit of an Ohio plaintiff, as assignee, to recover the amount of a judgment obtained by one Wright against the city of Watertown, in the same (Wisconsin) federal court. The opinion by Mr. Justice Harlan states that the plaintiff is "assignee of certain named persons who became, under assignments from Wright in 1873, the owners, in different portions, of that judgment"; that the trial court dismissed the action as barred by the Wisconsin statute of limitation; and that a question of jurisdiction arose from the record, although not pressed by counsel, and must be determined. Thereupon jurisdiction was denied, under the above provision, as stated in the opinion, "because it nowhere appears in

the record of what state the plaintiff's assignors were citizens when this action was commenced; indeed, it is consistent with the record that they were, at that time, citizens of the same state with the defendant." The question whether it could be maintained as a suit arising under the federal Constitution or laws was also discussed and overruled; and judgment was reversed with further showing of jurisdictional facts left open through amendments. From the statement above quoted, no assignments appear between that of the judgment-plaintiff to his respective assignees and their assignment to the plaintiff in suit, and the language imports that none intervened. The fact that the judgment was assigned in parcels to the several assignors of the plaintiff accounts for the requirement to show citizenship of "plaintiff's assignors." Alike with both of the foregoing citations, the case is authority for such requirement, but not for including mesne assignees.

Another case may be referred to, as in line with the above (and one of the most recent expressions of the Supreme Court) Kolze v. Hoadley, 200 U. S. 76, 82, 26 Sup. Ct. 220, 50 L. Ed. 377. The opinion states the general rules of interpretation settled by the authorities, with citations for each, and in reference to one of the contentions in support of jurisdiction remarks that it is immaterial whether the plaintiff derived title directly from the mortgagee, or from the alleged assignor of plaintiff, as both were citizens of the state where suit was brought, "and the inhibition of the statute would apply in either case."

The other lone line of interpretations—commencing with the initial cases under the Act of 1789 (Turner v. Bank of North America, 4 Dall. 8, 1 L. Ed. 718; Montalet v. Murray, 4 Cranch, 46, 2 L. Ed. 545; Gibson v. Chew, 16 Pet. 315, 10 L. Ed. 977) and including extended reviews in Coffee v. Planters' Bank, 13 How. 183, 187, 14 L. Ed. 105, Parker v. Ormsby, 141 U. S. 81, 83, 11 Sup. Ct. 912, 35 L. Ed. 654, and Emsheimer v. New Orleans, 186 U. S. 33, 42, 45, 22 Sup. Ct. 770, 46 L. Ed. 1042—marks the limitation only as applicable, respectively, either to the original parties to the instrument, the original payee, or the original assignor; and it is not deemed needful to give further citations in that line, nor review of the cases. The last-mentioned case, however (Emsheimer v. New Orleans), is noteworthy, for the reason that it was there contended that jurisdiction failed for want of averment in the bill showing the citizenship of "intermediate assignees" of the chose in action; and while decision was placed upon the ground that title was not so traced, but came directly from the original payees, the opinion cites and reviews, in reference to the above contention, the following pertinent cases at circuit as holding that intermediate assignees were not included in the statutory requirement, namely: Milledollar v. Bell, 2 Wall., Jr., 334, Fed. Cas. No. 9,549, opinion by Mr Justice Grier; Wilson v. Fisher, Bald. 133, Fed. Cas. No. 17,803; Portage City Water Co. v. Portage (C. C.) 102 Fed. 769.

We are of opinion, therefore, that these authorities do not extend the limitation to intermediate assignees, and that their utmost requirements are satisfied by the averments and proof that both mort-

gagee and the immediate assignor of complainant were entitled to sue in the federal court; that neither the language of the provision nor its apparent purpose requires like qualification on the part of the intermediate assignees, in the absence of evidence (under another provision) that subsequent assignments were merely colorable for evasion of the limitation; and that jurisdiction of the suit was rightly upheld.

[3] 2. The objection that the bill was not entertainable to administer the equitable relief authorized by the state statute is plainly untenable under the authorities. Bardon v. Land & River Imp. Co., 157 U. S. 327, 330, 15 Sup. Ct. 650, 39 L. Ed. 719; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; 11 Notes U. S. Rep. 940. While it is well settled that the state cannot exercise control over the chancery powers of the federal court, nevertheless "an enlargement of equitable rights by state statute may be administered" by such court "as well as by the courts of the state." Gormley v. Clark, supra. Thus having complete equitable jurisdiction over the controversy, we believe it to be equally clear that administration thereof embraces the inherent right to determine the effect, as between the parties to the bill, of the state court judgment described in the pleadings, subject only to its interpretation in conformity with the settled law of the state as to the force of such proceedings and judgment, and irrespective of any rule of state practice as to the special forum for that inquiry.

[4] 3. We come, accordingly, to the question on which the decree against the appellants hinges, namely: Whether the judgment of the state court, barring the claims and interest of the mortgagee and of all persons claiming thereunder, is without force against the complainant, under the evidence received, as tending to prove that the judgment-plaintiff (appellant) proceeded in such suit with notice of the unrecorded assignments of the mortgagee.

The mortgagee, Minnesota Lumber Company, was properly made a party with due service of process, as we believe, under the authorities applicable to the proceeding; and the statutory notice of lis pendens was filed, so that the judgment on the face of the record became binding against the assignees. No assignment of the mortgage was recorded until long after the entry of judgment; nor was the purported assignment by the mortgagee then completed, by naming the assignee, to entitle the instrument to be entered of record. The statute (section 1206, Wis. Stat.) expressly provides that the "judgment shall forever bar such defendants and all others claiming under them," after the filing of the lis pendens notice, "from all right, title or interest in said lands"; and the general statute (section 3187) in reference to lis pendens notice, likewise provides, that a purchaser or incumbrancer whose instrument is not recorded "shall be deemed a subsequent purchaser" and "shall be bound by the proceedings in the action to the same extent and in the same manner as if he were a party thereto." In Warner v. Trow, 36 Wis. 195, 200, these provisions were upheld as concurrent and applicable to tax foreclosure proceedings and judgment; and the effect of the latter provision is well and pertinently stated and applied in Cutler v. James, 64 Wis.

173, 175, 24 N. W. 874, 54 Am. Rep. 603; Prahl v. Rogers, 127 Wis. 353, 359, 106 N. W. 287; Siedschlag v. Griffin, 132 Wis. 106, 112, 112 N. W. 18.

[5] The facts relied upon as notice to the appellant Farr of the unrecorded assignment are, in substance, as follows: Prior to the assignment of the mortgage by Minnesota Lumber Company—but, as elsewhere appears, after its purchase was agreed upon—Murphy had a brief conversation with Farr about purchase of tax certificates held by the latter on the lands, mentioned as "Holmes lands," and after the date of the assignment correspondence between them is in evidence upon the same subject, without either statement or suggestion by Murphy that he had purchased the mortgage; nor was the mortgage mentioned between them. Farr sent Murphy a list of the "Holmes lands" on which he held certificates and tax deeds, with an offer to sell at the "cost of redemption with a small excess," and inferred (as he admits) that Murphy was interested in some way in the lands; but only a few certificates were taken by him on what were mentioned as "Ogema lands." Farr was then informed that Murphy intended to operate the "Ogema mill," and subsequently knew that Ogema Lumber Company, Murphy's corporation, was operating the mill, which was on lands embraced in the mortgage, but not embraced in the present controversy. In December, 1900, however, Mr. Barry was serving as attorney for Farr, intending to commence proceedings for foreclosure of the tax deeds, and had correspondence (in evidence) with Engstand & Lofquist, who were operating the "Ogema mill," as successor to Murphy, in reference to "the whereabouts of the Minnesota Lumber Co." (mortgagee), and with the Ogema Lumber Company, in reference to their claims. It appears therefrom: That the address of the mortgagee was stated to be "at Polo, Ill." That Barry wrote to Ogema Lumber Company that he had "set an action going" to foreclose Farr's tax deeds on "the Holmes lands." That their name did not appear of record, "otherwise you would have been made a party to the action," and then inquired:

"What mortgage have you? If you have the mortgage held by Minnesota Lumber Company, you had better put your assignment upon record, and you can come into this action if you desire. We have not yet served this last named company, but expect to very soon. Let us hear from you as to this."

That such letter was written in reference to one from the Ogema Lumber Company to another party, stating:

"We hold the mortgage on all Holmes land, but have not done anything yet to clear title."

That Ogema Lumber Company replied to the foregoing Barry letter:

"Yes, we hold the mortgage of the Minnesota Lumber Co., as stated in last letter, but have not come to a conclusion what to do yet"

—and then requested Farr's address. To this letter Barry replied, giving Farr's address, and stating:

"You had better put your assignment on record and come into this action. See your attorney at once, as if you come in we need not serve on Minnesota Lumber Co. If you do not, we shall proceed in the absence of any record of transfer."

The Ogema Company neither tendered the instruments—which appear from the evidence, as before stated, to have been in its custody, with the blank assignment only—nor communicated with Farr, nor answered these requests in any form; and Barry, after reasonable delay, proceeded to obtain service on the mortgagee of record, making an amendment and additional expense needful.

We believe the ruling of the trial court, in effect setting aside the judgment in such proceedings as inoperative against this complainant, to be unsupported by the above facts, irrespective of other questions raised as to its impeachability in the case at bar. Whatever may have been the equities of Murphy, as between himself and Craig or Ogema Lumber Company, no disclosure thereof was either made or intimated in his transactions with Farr, to charge Farr with notice of such equities. Moreover, it further appears from the evidence that Farr wrote to Murphy, prior to the suit, stating that no interest in his favor appeared of record, and requesting that he record or show any claim he held, but no answer was received; that Farr had no information, in any form, either of the nature or fact of Murphy's interest; and that Murphy had then, as he states in his testimony, abandoned all interest or claim in the premises. So the transactions with Murphy are without force as notice to defeat the effect of the judgment, in either aspect of the case. In reference to the notification on the part of Ogema Lumber Company, that "we hold the mortgage of the Minnesota Lumber Co.," it may well be conceded that good practice would have justified, if not required, making such claimant a party defendant with the mortgagee of record, to assure foreclosure of any claim it might have. But the bill neither sets up any interest or title derived from or through the Ogema Lumber Company, nor that Farr had notice of any such claim, resting the complainant's title on the assignment by the Minnesota Lumber Company, as above described, which was subsequently completed and recorded in favor of Craig, and averring that Farr had notice thereof. Thus the question is not presented, whether an application on behalf of the Ogema Lumber Company, or under its claim, would be entertainable in equity, either under the circumstances above stated of express notice of the suit, or without legal assignment of the mortgage, or subsisting interest (legal or equitable) in the lands described in the judgment.

In the course of the oral argument, it was further contended that sufficient occupancy appears of the lands in suit to constitute notice of claim under the mortgage, but we believe this contention to be unsupported by the testimony. Whatever of actual possession is in evidence, directly or indirectly, at the date of Farr's suit, was in the Ogema Lumber Company, extending only over the so-called "Ogema lands," not included in the tax deed or judgment in favor of Farr; and it is neither proven nor claimed that any portion of the lands in suit were continuously occupied by any claimant for logging purposes or otherwise. Craig (assignee of the mortgage) testifies that he viewed the lands in 1898 and "there was no land but what the best timber was cut off"; that they were "all cut-over land." It is

stated in general terms, by one or more witnesses, that timber was taken in their operations from the "Holmes lands," and that there were "logging roads over different portions" which were "used in the winter," but no testimony appears which fixes such use of any tract in controversy, either at the date of Farr's suit, or during the season immediately prior thereto. So the question is not presented whether actual use of roadways across the lands for logging or other purposes would serve as notice that the user was assignee of the mortgage.

The proof is undisputed that neither Farr nor his attorney had information or suspicion that Craig or Murphy, or either of them, had purchased the mortgage held by Minnesota Lumber Company, or claimed interest therein in any form; and we believe it clearly appears throughout the testimony that reasonable effort was made to ascertain whether the mortgage had been assigned in fact without record thereof for the purpose of making any owner thereof party to the suit, and that the proceedings were conducted to that end in good faith, with neither notice nor grounds for belief that Craig or Murphy held or claimed the mortgage or interest thereunder.

The case, therefore, is in no sense within the rule of Coe v. Manseau, 62 Wis. 81, 90, 91, 22 N. W. 155, cited in the opinion of the trial court and in the argument of counsel as governing the inquiry, and we believe no authority appears for the decree under any rule cited in the argument.

Other propositions urged in favor of the decree have received consideration, including the contention that the above-stated provisions as to the effect of lis pendens notice, if construed to "bind unrecorded claimants," violate "the principle of due process of law" and are unconstitutional, but we believe neither to be tenable, and that further extension of this opinion for their discussion is unnecessary.

The decree of the Circuit Court is reversed accordingly, with direction to dismiss the bill for want of equity.