**Cheryl O. HOLMES, Plaintiff,**

v.

**DRUG ENFORCEMENT ADMINIS-TRATION, Department of Justice, Alberto R. Gonzalez Attorney General, Defendants.**

No. EP–04–CA–474–FM.

United States District Court,
W.D. Texas,
El Paso Division.

March 30, 2007.

Cheryl O. Holmes, El Paso, TX, Pro se.

Constance Russell Wannamaker, Law Office of Constance R. Wannamaker, Magdalena G. Jara, Assistant U.S. Attorney, El Paso, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

FRANK MONTALVO, District Judge.

On this day, the Court considered "Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment" ("Motion to Dismiss") [Rec. No. 24], "Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" ("Response") [Rec. No. 29], "Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgement" ("Reply") [Rec. No. 34], "Defendant's Objections to Plaintiff's Summary Judgment Evidence" [Rec. No. 31], "Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence" [Rec. No. 32], "Defendant's Supplemental Brief in Support of His Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" ("Defendant's Supplemental Brief") [Rec. No. 38], "Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment" [Rec. No. 39], and "Defendant's Reply to Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment" [Rec. No. 41]. After duly considering the motion, response, reply, additional briefings, summary judgment evidence, and applicable case law, the Court concludes it should GRANT "Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment" [Rec. No. 24] for the following reasons:

## I. BACKGROUND

### A. Factual Background

Plaintiff Cheryl Holmes ("Plaintiff") brings the instant action alleging employment discrimination by her employer, the Drug Enforcement Administration ("Defendant"). Plaintiff began her career with the DEA in 1975. In 1994, Plaintiff was promoted to Chief of Research and Analysis Section ("RAS Chief") at the El Paso Intelligence Center (EPIC).[1] Her promotion raised her pay classification from level GS–14 to level GS–15, the highest general service level a DEA employee may attain. Plaintiff was the first and only woman to ever hold her position or any comparable position at EPIC. When Plaintiff joined EPIC, it was operating under a charter from 1987. Shortly after her arrival in 1994, a new charter was implemented. The 1994 charter provided that Section Chief positions would be rotational, with an initial term of at least three years and two optional one-year extensions.

In June 1999, the EPIC Principals Accord ("Principals Accord") became effective, superceding the 1994 EPIC Charter and all EPIC Advisory Board Directives. The Principals Accord identifies the RAS Chief as a position which rotates among EPIC's principal participating agencies: the DEA, the Federal Bureau of Investigation ("FBI"), the United States Customs Service ("USCS"), the United States Coast Guard, and the Immigration and Natural-

---

1. According to Defendant, EPIC's mission is to support United States law enforcement, primarily by identifying and frustrating those organizations responsible for drugs, weapons, and illegal aliens and through providing other intelligence support the Director may choose to provide given the available resources.

EPIC currently consists of 37 agencies, only five of which are "principal" agencies. At all times relevant to this lawsuit, EPIC was comprised of 15 agencies. Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., Rec. No. 24, p. 7.

ization Service ("INS"). Under the Principals Accord, an RAS Chief initially serves in his or her position for a two-year period, followed by a possible one-year extension. The Principal's Accord requires the removal of incumbents who have served in the same position for longer than three years as soon as is practical. Of the positions affected by the change, only Plaintiff's position of RAS Chief was immediately affected by the implementation of the Principals Accord. The agency whose turn it is to fill the RAS Chief position decides if it will take a rotational assignment for the position and then selects the person to fill it. However, because the Principals Accord controls the assignment and disposition of the section chief position, the DEA could not unilaterally attempt to impose different conditions or terms on the position.

In 1999, then-EPIC Director John Brown informed Plaintiff her position was rotational and her tour would be ending. He indicated to her that she should start looking for another job. Although Plaintiff was notified as early as 1999 that her position was rotational and the Principals Accord clearly stated that incumbents were to be rotated out as soon as possible, it was not until January of 2001 that Plaintiff was notified that INS had found someone to fill her position as RAS Chief. Then–EPIC Director William Ledwith ("Ledwith") informed her on Friday, January 26, 2001 that she had to be out of her office by Sunday, January 28, so that the new chief could take over her office on Monday. After being rotated out of the Chief position, Plaintiff did not have another job immediately available. When asked what she wanted to do, Plaintiff requested to be moved to the DEA's El Paso Field

Division ("EPFD"). The Agency subsequently reassigned Plaintiff to a 120–day temporary detail with the EPFD. The Agency later agreed to extend Plaintiff's detail by an additional year.

Then, on or about June 26, 2001, Ledwith, called EPFD Special Agent in Charge Sandalio Gonzalez ("Gonzalez") and informed him that he wanted Plaintiff to return to EPIC. Gonzalez objected because he felt Plaintiff was doing important and valuable work at EPFD. Gonzalez also told Ledwith he believed that Plaintiff was being treated unfairly and that this might cause her to retire. Ledwith allegedly then told Gonzalez, "that's the idea." [2]

In March 2002, then-EPIC Director James Mavromatis ("Mavromatis") assigned Plaintiff to the position of Special Assistant to the Deputy Director of EPIC. Plaintiff describes the new position as:

This was a position that previously had not existed and apparently did not exist following Holmes' retirement. No request for personnel action was prepared for this reassignment and there was no notification of personnel action. There was no job description for the position nor were there performance standards. For the year Holmes held this position she received no performance evaluations.... Mavromatis and the Director of Intelligence, Steven Casteel, knew that she was occupying a non-existent position.[3]

On October 16, 2002, the agency notified Plaintiff it was transferring her to DEA headquarters in Washington, D.C. Plaintiff submits that this transfer was retaliatory, discriminatory, and an attempt to force her retirement because this transfer occurred while her workers' compensation

**2.** Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Appendix, Statement of Facts, Rec. No. 29, p. 6.

**3.** Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Appendix, Statement of Facts, Rec. No. 29, pp. 7–8.

claims were gaining momentum. Plaintiff made plans to transfer from El Paso to Washington D.C. She was notified of her transfer via a cable on October 21, 2002, which instructed that she must report to Washington D.C. within 90 days of the cable's date. The cable also instructed Plaintiff not to incur any transfer expenses until she received her travel orders. Plaintiff did not receive her travel orders until January 23, 2003. She then requested an extension and received 45 more days to complete her move. Plaintiff subsequently wrote a memorandum to the Career Board rescinding her employment agreement and indicating that she intended to retire. When Plaintiff notified Mavromatis of her plans, Mavromatis told Plaintiff that she had to either be retired or at Headquarters by March 9, 2003 or she would be considered AWOL and face disciplinary and monetary repercussions.

### B. Plaintiff's Claims

Plaintiff brings the instant action alleging Defendant violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, (2000) ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* In her Complaint, Plaintiff alleges Defendant discriminated against her based on sex (female) and age (over the age of 40); as well as retaliation. She also alleges that she was subjected to a hostile work environment. Finally, she alleges that she was constructively discharged when she retired in 2003.

### C. Defendant's Motion

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)1 and 12(b)(6); and for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In its Motion, Defendant contends Plaintiff has failed to exhaust her administrative remedies regarding two of her Agency Complaints. Because exhaustion of administrative remedies is a jurisdictional prerequisite for federal court review of Title VII and age discrimination claims, Defendant urges the Court to dismiss the Plaintiff's allegedly unexhausted claims pursuant to Rule 12(b)(1). Defendant further contends Plaintiff fails to set forth a prima facie case of discrimination, retaliation, hostile work environment and constructive discharge. Alternatively, Defendant asserts that, even assuming Plaintiff has established a prima facie case of discrimination and retaliation, Defendant has articulated legitimate and nondiscriminatory reasons for its decisions regarding Plaintiff's employment. Because Plaintiff has not carried his burden of production by presenting admissible or minimally persuasive evidence that Defendant's proffered reasons were a pretext for discrimination, Defendant contends it is accordingly entitled to summary judgment in this action.

### II. STANDARDS FOR DISMISSAL

The Court now considers the legal standards governing Defendant's Motion.

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") addresses the court's subject matter jurisdiction, derived from the Case or Controversy Clause of Article III of the United States Constitution. U.S. CONST. art. III.; *Finley v. United States,* 490 U.S. 545, 558, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (Stevens, J., dissenting) (majority result later superseded by statute) ("Article III of the Constitution identifies the categories of 'Cases' and 'Controversies' that federal courts may have jurisdiction to decide."). As federal courts are courts of limited jurisdiction, it is presumed that

a case lies outside the jurisdiction of the federal courts unless proven otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also Turner v. Bank of N. Am.*, 4 U.S. 8, 11, 4 Dall. 8, 1 L.Ed. 718 (1799); *State of Texas v. West Pub. Co.*, 882 F.2d 171, 176 (5th Cir.1989)(concluding that the plaintiff did not satisfy its burden to show that an "actual controversy" existed). Rule 12(b)(1) demands dismissal if the court lacks jurisdiction over the subject matter of the plaintiff's complaint. FED.R.CIV.P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980). " 'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.' " *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, however, cannot be converted into a motion for summary judgment. *See Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir.1979). Nevertheless, the court may consider

> outside matters which are attached to a motion to dismiss without first converting it into a motion for summary judgment "if the material is pertinent to the question of the District Court's jurisdiction since it is always the obligation of a federal court to determine if it has jurisdiction."

589 F.2d at 247 (citing *State of Alabama ex rel. Baxley v. Woody*, 473 F.2d 10, 12

(5th Cir.1973)); *see also Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996) (stating that, in ruling on a 12(b)(1) motion, the court may examine evidence outside the pleadings).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits a court to dismiss all or part of a complaint "for failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim under Rule 12(b)(6) is viewed with disfavor and is rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). In considering a motion to dismiss for failure to state a claim, a court must accept as true the well pleaded factual allegations and any reasonable inferences to be drawn from them. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Dismissal of a claim under Rule 12(b)(6) is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on such a motion, a court may not look beyond the face of the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). Finally, a court may dismiss a claim "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when viewed in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor. *Lowrey*, 117 F.3d at 247. A plaintiff, however, must plead specific facts, and not mere conclusory allegations, to avoid

dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

### C. Federal Rule of Civil Procedure 56

Summary judgment is only proper where the non-movant cannot demonstrate a genuine issue of material fact. FED. R.CIV.P. 56(c). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether to grant a motion for summary judgment a Court should view all evidence and the inferences to be drawn therefrom "in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In addition, a court should accept as true all evidence submitted by the non-movant. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Finally, courts should refrain from weighing evidence or making credibility determinations. *Id.* at 150–51, 120 S.Ct. 2097.

### III. EXHAUSTION OF REMEDIES

#### A. Failure to Exhaust, Generally

■ Before bringing suit in federal court, "Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies. The complainant also must file his complaint in a timely manner. If the claimant fails to comply with either of these requirements then the court is deprived of jurisdiction over the case." *Randel v. U.S. Dep't of Navy,* 157 F.3d 392, 395 (5th Cir.1998) (internal citations omitted). In order to exhaust administrative remedies, a plaintiff must comply with the EEO reg-

ulations set forth at 29 C.F.R. § 1614.105. A federal employee claiming discrimination must first contact an EEO counselor within 45 days of the allegedly discriminatory incident. 29 C.F.R. § 1614.105(a)(1). If the claim is not resolved at the first stage, the EEO counselor has 30 days in which to notify the employee of his right to file a formal discrimination complaint with the employing agency. 29 C.F.R. § 1614.105(d). The employee then has fifteen days from receiving this notice to file a formal complaint of discrimination. 29 C.F.R. § 1614.105(d).

#### B. Agency Complaint D–02–3686

■ Defendant first argues Plaintiff failed to timely exhaust her discrimination claim regarding the rotation of the RAS Chief position, her temporary assignment to the EPFD in February 2001, and her temporary assignment to Special Projects Coordinator in July 2001. Plaintiff was aware that her transfer was likely in October 1999, when the then-EPIC Director informed her the RAS Chief position would be rotating and she should start looking for another job. In oral deposition testimony, Plaintiff testified that she felt in 1999 that the agency's actions in rotating her position were discriminatory.[4] However, Plaintiff admits she did not contact an EEO counselor at the time. On January 26, 2001, Plaintiff was notified that Customs would be filling the RAS Chief position. Plaintiff vacated that position on January 26, 2001. The Court finds that, at the latest, DEA's alleged adverse action against Plaintiff occurred when it transferred her on January 26, 2001. However, Plaintiff did not contact an EEO counselor until approximately fifteen months later on April 29, 2002. Accordingly, Plaintiff

---

**4.** Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., Rec. No. 24, Exh. 7, p. 157.

failed to timely exhaust on this claim of discrimination.

Plaintiff does not dispute that she did not seek informal counseling within 45 days of the relevant dates mentioned above. Instead, Plaintiff argues she fully exhausted her administrative remedies before initiating this lawsuit because there was no "official personnel action" accompanying her removal from the RAS Chief position and therefore no event which would have triggered the running of the 45–day period. However, the Court notes that on February 1, 2001, Ledwith requested the DEA Career Board to detail Plaintiff to EPFD for 120 days. This detail was approved, effective February 4, 2001, and terminated on June 2, 1001. In addition, Plaintiff has not cited any authority for the theory that a plaintiff must wait for a certain prescribed action or any such document titled "official personnel action" to trigger the running of the 45–day period. Plaintiff further argues she did not contact an EEO counselor because she was unsure of the Defendant's discriminatory motive. However, Plaintiff herself testified she felt she had been discriminated against in 1999 when the agency told that her position would be rotating.

Lastly, Plaintiff submits that because she alleged "that she was treated differently than other employees," she presented a hostile work environment claim in her EEOC complaint and as such, "any related discrete acts can be included in the hostile work environment claim."[5] Under a "continuing violation" theory, the Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106

(2002). Here, Plaintiff has not established the continuing violation theory as she has not produced evidence of "the *same type* of discriminatory acts [occuring] both inside and outside the limitations period, such that a valid connection exists between them." *See Felton v. Polles*, 315 F.3d 470, 485 (5th Cir.2002). Further, the Court agrees with Defendant that "Plaintiff had sufficient notice of a basis for alleged violation of her rights, long before the single incident within the statute of limitations."[6] Accordingly, the Court finds Plaintiff failed to timely exhaust her discrimination claims regarding the rotation of the RAS Chief position, her temporary assignment to the EPFD in February 2001, and her temporary assignment to Special Projects Coordinator in July 2001.

### C. Agency Complaint Number D–03–3719

In Complaint Number D–03–3719, Plaintiff charged discrimination when, on October 16, 2002, Movromatis informed Plaintiff that the DEA Career Board had approved her transfer·to DEA Headquarters in Washington D.C. Plaintiff alleged that agency transferred her due to her age and gender and to derail her workers compensation and EEO complaints, which were gaining momentum. She further contended that DEA intended to cover up its refusal to respond to her job requests and the inequitable treatment she received at EPIC. On May 19, 2003, Plaintiff contested the first accepted issue by the Agency because she emphasized that the transfer forced her to retire from the agency. In June of 2003, Plaintiff was notified that her issues had again been amended and were accepted as: "That because of age, sex, and reprisal, you claim

---

5. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, pp. 4–5.

6. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Rec. No. 34, p. 4.

that the agency's decision to transfer you from the El Paso Intelligence Center to Headquarters was retaliation for having filed an EEO complaint, an attempt to derail your complaint from going forward, and an attempt to force you to retire."[7] At the same time, however, Plaintiff received notice that the agency was partially dismissing her second claim, stating that it would not accept the bases of sex, age and reprisal as it had been included in Plaintiff's first claim. Plaintiff unsuccessfully appealed this dismissal.

The final issue the EEOC accepted for investigation was "that because of sex, age, and reprisal, you claim that in retaliation for your previous EEO activity DEA officials forced you to retire."[8] The agency issued its final decision on September 20, 2004, which stated:

> [a]lthough the EEO Office correctly included complainant's allegation that the discrimination and retaliation continued after she agreed to transfer to Headquarters as part of her claim that DEA management forced her to retire, the record does not include information pertaining to complainant's acceptance of the transfer to Headquarters, nor her treatment after such acceptance. It was an error not to investigate or to address this additional issue.[9]

The Final Agency Decision instructed Plaintiff to file an appeal with the Merit Systems Protection Board (MSPB) within 30 days or initiate EEO counseling within 45 days from the date of the decision. However, Plaintiff did not seek either appeal to the MSPB or re-file her claim with the EEO.

At the time, Plaintiff insisted that the issue was not accepted and refused to answer any inquiries regarding her constructive discharge. While the Final Agency Decision allowed Plaintiff to re-file her EEO claim or file an appeal with the MSPB, Plaintiff did neither. The EEO therefore did not investigate the claim. Defendant therefore argues that because the Agency did not have an opportunity to fulfill its primary purpose of investigating and resolving the claims before Plaintiff resorted to the federal courts, her claims are barred. Plaintiff responds that "the regulations do not appear to contain any provisions for directing an employee to re-file their claim where an agency has failed to investigate an accepted claim."[10] Further, Plaintiff submits "[t]he agency had previously accepted Plaintiff's claim that she had been forced to retire. If the agency failed to investigate that claim, and surrounding issues, Plaintiff should not be forced to re-file the claim prior to being able to take her case to court."[11] Lastly, Plaintiff argues that the time periods for filing EEO claims are subject to equitable tolling or equitable estoppel. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a stat-

---

7. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 6.

8. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 6.

9. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 7.

10. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 7.

11. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 8.

ute of limitations, is subject to waiver, estoppel, and equitable tolling.").

■■■ A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir.1995) (overruled in part on other grounds by *Burlington Northern*, —— U.S. at ——, 126 S.Ct. at 2405). However, according to Plaintiff's Complaint, nothing that occurred after October 16, 2002 was included in Complaint D–03–3719. According to the Final Agency Decision, information pertaining to Plaintiff's acceptance of the transfer to Washington D.C. and her treatment after the acceptance should have been investigated by the EEO Office. Because Plaintiff did not file an appeal within 30 days or initiate EEO counseling within 45 days of the decision, the Court finds the Agency did not have the opportunity to fulfill its purpose and investigate, and possibly resolve, the claims before the Plaintiff filed suit. *See, e.g., McCarthy v. Madigan*, 503 U.S. 140, 144–48, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (superseded on other grounds by statute in *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)) (noting that the exhaustion of remedies requirement protects administrative agency authority, promotes judicial efficiency, and furthers the "commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes ... before it is haled into federal court.").

The Court finds Plaintiff abandoned the administrative process before final disposition and did not fully exhaust her administrative remedies when she did not re-file her EEO claim or file an appeal with the MSPB as directed by the Final Agency Decision. As the Ninth Circuit has stated, "To withdraw is to abandon one's claim, to fail to exhaust one's remedies." *Rivera v. U.S. Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir.1987). Accordingly, her claim that the Agency forced her to retire by imposing conditions on her such as disciplinary action, further retaliation, and loss of income is barred by limitations.

## IV. GENDER DISCRIMINATION

### A. Discrimination, Generally

Plaintiff contends that she suffered discrimination because of her gender. Title VII prohibits an employer from failing or refusing to hire or promote, or from discharging an individual "because of such individual's race, color religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Federal employees' protections against gender discrimination are set forth in 42 U.S.C. § 2000e–16.

Because the record[12] in this case contains no direct evidence of gender discrimination and Plaintiff proceeds on a pretext theory, the Court will employ the three-part burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Texas Dep't of C'mty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Byers v. Dallas Morning News*, 209 F.3d 419, 425–26 (5th Cir.2000). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *Byers*, 209

12. Plaintiff stipulates that she has no direct evidence of gender discrimination and therefore attempts to establish a *prima facie* case based on circumstantial evidence. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 11.

F.3d at 425–26. If she successfully establishes a *prima facie* case, the burden then shifts to Defendant to demonstrate a legitimate, nondiscriminatory reason for its action. *Id.* Finally, Defendant meets its burden, the burden shifts back to the Plaintiff to demonstrate that the defendant's proffered nondiscriminatory action is actually pretext for illegal discrimination. *Id.*

### B. Prima Facie Case

■ In order to establish a *prima facie* case of gender discrimination, Plaintiff must show, by a preponderance of the evidence, the following: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) after her adverse employment action, she was replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated. *Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir.1998), *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999). Defendant argues that it is entitled to summary judgment on Plaintiff's gender discrimination claim because she has failed to establish a prima facie case. It is undisputed that Plaintiff is a female, therefore satisfying the first element of the prima facie case. It is also undisputed that she was qualified for her position, therefore satisfying the second prong. Defendant's main argument is that Plaintiff fails to state a claim for the majority of the issues she complains of because the claims are not actionable adverse actions for purposes of discrimination and Plaintiff has not identified similarly situated employees.

### 1. Adverse Employment Action

■ The Fifth Circuit maintains a "strict interpretation of the adverse employment element of [the] prima facie intentional discrimination case." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282–84 (5th Cir.2004). Further, pursuant to Title VII "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action. Rather, an adverse employment action consists of *'ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating.' " *Id.* at 282. (internal citations omitted). "Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Id.* Demotions also qualify as adverse employment actions under Title VII. *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999).

■ In the context of a Title VII discrimination case, an adverse employment action has been defined as being:

a materially adverse change in the terms and conditions of employment [that] must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices that might be unique to a particular situation.

*Craven v. Texas Dept. of Crim. Justice, Institutional Div.*, 151 F.Supp.2d 757, 768 (N.D.Tex.2001) (quoting *Crady v. Liberty Natl. Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)); *see also Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (quoting *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996)) (noting that the "clear trend of authority is to hold that a purely lateral transfer, that

is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action"); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (requiring changes in employment status must create a "materially significant disadvantage" to meet adverse employment requirement); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993) (transfer with no significant change of responsibilities was not adverse employment decision in ADEA case) *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir.1998) (failure to receive lateral transfer not an adverse employment decision in Title VII discrimination case). In determining whether the employment action was adverse, courts should view the action objectively. *Pegram*, 361 F.3d at 283.

■ A review of the evidence submitted in this cause demonstrates that Plaintiff cannot create a genuine issue of fact that her transfer from the RAS Chief position or any subsequent transfer qualifies as an adverse employment action within the context of a Title VII gender discrimination claim. In her first agency complaint,[13] Plaintiff alleged that because of age, sex and reprisal, she was discriminated against when DEA officials rotated her from her position as RAS Chief. However, Plaintiff occupied a term position and knew after she assumed the job that the RAS Chief was a rotational position.[14] The DEA also notified her that, under the Principals Accord, the other agencies wanted to place one of their employees in that position to establish a managerial presence for themselves. Drawing all inferences in the light most favorable to Plaintiff, the Court finds that there was no adverse employment action here.

■ Plaintiff further alleges that she was discriminated against when: 1) from February 2001 to July 2001, Ledwith assigned her to the EPFD; 2) in July 2001, Ledwith assigned her to the job of Special Projects Coordinator; and 3) on March 20, 2002, Mavromatis assigned her to serve as Executive Assistant to the Deputy Director. Plaintiff argues that the assignments represent adverse employment actions because the DEA removed her from a high-level supervisory position where she supervised over "100 employees to positions where she did not supervise anyone, ... not even a secretary."[15] Further, Plaintiff avers that the transfers in question constituted adverse employment actions because the DEA removed her from her high-level supervisory position and "put in jobs where she had no authority, no performance standards and no evaluations."[16]

Defendant submits that Plaintiff's temporary assignments did not amount to an adverse employment actions, arguing:

(1) she suffered no loss of pay or benefits in the temporary assignment as Executive Assistant to Deputy Director (or at any time alleged in her complaint); (2) during the entire time she complaints she continued to receive the salary and

---

13. Agency No. D–02–3686.

14. In a 2001 memorandum to Office of Special Counsel, Plaintiff admits the following: "After I reported to EPIC and purchased a residence, I learned that the 1987 EPIC Charter indicated that my position was rotation, with a 3–year tour and the possibility of a 1–year extension." Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., Rec. No. 24, Ex. 13, p. 8.

15. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 12.

16. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 12.

benefits of a GS–15–10, which in 2002–2003 was approximately $123,000; (3) during this time, she received the United States Attorney's Award from the District of Connecticut; (4) she received an award by the DEA for her contribution in the filed of drug law enforcement; (5) although Plaintiff was not supervising other employees, she attended executive meetings and reported to the Deputy Director. The Deputy Director was a Senior Executive Staff position; (6) according to an Affidavit by Bill Childress, Chief R & S, he and Plaintiff worked in forming a counterintelligence research plan after September 11, 2001; and (7) she additionally worked on MOUs for the Agency which included EPIC's agreements with both state and federal agencies and on FOIA requests. Plaintiff acknowledged MOUs were important to EPIC.[17]

Having carefully reviewed the summary judgment record and drawing all inferences in the light most favorable to Plaintiff, the Court concludes Defendant's arguments regarding the lack of an adverse employment actions here are correct. First, the evidence shows these assignments were temporary. Also, the transfers of which Plaintiff complains did not affect her pay, benefits, or compensation.[18] Further, Plaintiff does not state what promotions or awards the transfers effectively denied her. Defendant's detailed discussions regarding the differences in Plaintiff's assignments show none of the assignments could be classified as an adverse employment action. Although Plaintiff presents some evidence that the positions do involve some differences in the types of responsibilities, as a matter of law, the

Court finds these differences do not rise to the level of an adverse employment decision. The evidence shows Plaintiff's complained-of actions all were transfers that did not involve any sort of demotion in form or substance. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406–07 (5th Cir.1999) (affirming summary judgment where plaintiff failed to produce significant evidence of a change in responsibilities, employment status, or benefits). After careful consideration of relevant case law, the Court concludes Plaintiff did not suffer an adverse employment action. Accordingly, Plaintiff cannot establish a prima facie case of gender discrimination under Title VII.

2. Similarly Situated

■ To establish a prima facie case of disparate treatment discrimination under Title VII, Plaintiff must also produce evidence that the agency afforded similarly situated individuals better treatment. The circumstances of the allegedly similarly situated individuals must be "nearly identical." Wheeler v. BL Development, 415 F.3d 399, 406 (5th Cir.2005); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir.1995). The similarly situated individuals who received better treatment must also fall outside Plaintiff's protected class. Wheeler, 415 F.3d at 399; Bryan, 375 F.3d at 360; Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 512–13 (5th Cir.2001).

■ Plaintiff argues she can show disparate treatment and thereby satisfy the fourth prong of the prima facie case, arguing

---

**17.** Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Rec. No. 34, p. 7.

**18.** As argued by Defendant, Plaintiff on one hand attempts to use the transfer to EPFD as a adverse employment action, but on the other hand, Plaintiff states she wanted to stay at the EPFD and she was functioning "at a managerial level." Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 24, Ex. 1, pp. 48–49.

[f]rom the time she began at EPIC in 1994 she was treated differently because she is a woman, at one point being told she could not give a briefing for the reasons that she was a woman. Then, in 1999 when the Principals Accord was adopted, the only position which was affected by the rotational element was hers. She was the only woman, and the first woman, to ever hold her position or any other comparable position at EPIC.[19]

In support of her argument Plaintiff further notes that the positions supervising hers were all filled by males during her tenure.

However, the Court concludes that Plaintiff fails to show that persons outside her protected status, who were similarly situated, were treated more favorably. In her Response, Plaintiff fails to identify anyone outside her protected class that was treated more favorably. The rotational requirement of the Principals Accord applied to all employees, even if they were not DEA. In addition, even though William Childress, Plaintiff's replacement as RAS Chief, was not a DEA employee and not similarly situated, there was no evidence that he was treated more favorably. As stated in Childress' deposition: "I will be in the position for just a little over two years when I retire from this position. I understand that if I did not retire, I would have been removed from the position." [20] Plaintiff has thus failed to establish her prima facie case of discrimination.

### C. Legitimate, Non–Discriminatory Reason

■ Defendant argues that, even if the Plaintiff established a prima facie case of discrimination, it has proffered a legitimate, non-discriminatory reason for its actions. As its legitimate, nondiscriminatory reason, Defendant presents evidence demonstrating the RAS Chief job was rotational and her term simply ended. After careful consideration, the Court finds Defendant has satisfied its burden to articulate a legitimate, nondiscriminatory reason for its actions. Under the *McDonnell Douglas* framework, the burden shifts back to Plaintiff, who, in order to survive summary judgment, must raise a genuine issue of material fact as to whether Defendant's proffered reason was merely a pretext for illegal discrimination.

■ Plaintiff argues Defendant's reasons for its actions are merely pretextual. Plaintiff may prove pretext by "either showing that a discriminatory reason motivated the defendant or by showing that the proffered reason is unworthy of credence." *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir.1993) (internal citations omitted). "To overcome a motion for summary judgment of course, the plaintiff need only produce evidence to create a genuine issue of material fact concerning pretext." *Id.* To carry her burden, "the plaintiff must produce substantial evidence of pretext." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir.2001). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Id.* Further, the Fifth Circuit has consistently held that the plaintiff's "subjective belief" of discrimination alone is insufficient to establish pretext. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir.1995).

■ Although the agency asserts that the Principals Accord required it to rotate

---

**19.** Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, p. 14.

**20.** Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Rec. No. 34, exh. 1, p. 85.

Plaintiff from the RAS Chief position, Plaintiff argues the DEA selectively enforced the Accord's provisions. Moreover, Plaintiff submits there is no documentation reflecting the official removal from the RAS Chief position. The lack of a formal document is of no import, as the fact is Plaintiff was replaced by William Childress. Plaintiff also submits that if her position was in fact subject to rotation, the Agency would have announced the rotation, as is standard procedure. Plaintiff further argues Defendant's stated reason is pretext because the jobs she held after being transferred from the RAS Chief job were unimportant and did not require GS–15 level work.

At this stage, the Fifth Circuit requires Plaintiff's evidence of pretext to support an inference that intentional discrimination was the real reason for the employment decisions. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002) (noting that "[o]n summary judgment ... the plaintiff must [also] substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."). After reviewing all of the detailed record, the Court concludes Plaintiff has not raised a genuine issue of material fact that Defendant's reason for its actions is a mere pretext for discrimination. Accordingly, the Court **GRANTS** summary judgment on Plaintiff's claims asserting gender discrimination in violation of Title VII.

## V. AGE DISCRIMINATION

### A. Unlawful Age Discrimination Under the ADEA, Generally

 Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.

§ 623(a)(1); *see also Machinchick v. P.B. Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). To establish a prima facie case of age discrimination, the plaintiff is required to show: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir.1993); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir.2004).

### B. Direct Evidence of Age Discrimination

 The Court will first determine whether Plaintiff has set forth direct evidence of age discrimination. If a plaintiff presents direct evidence of age discrimination, he may proceed under the "mixed-motive" analysis. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). "The mixed-motive analysis requires only that a plaintiff produce direct evidence that 'discriminatory animus played a role in the decision at issue,' after which the 'burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus.'" *Id.* (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir.2002)). The Fifth Circuit has held "[d]irect evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad*, 309 F.3d at 897 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir.1995)). "If ... plaintiff produces direct evidence of discrimination, the *McDonnell Douglas* test is 'inapplicable.'" *Rachid*, 376 F.3d at 309.

 Plaintiff asserts she has direct evidence of age discrimination and therefore

her ADEA claim should be analyzed under the "mixed-motive" analysis. Her first proffered example of direct discrimination arises from a conversation between Gonzalez and Ledwith in which they discussed Plaintiff's return to EPIC from EPFD in 2001. When Gonzalez told Ledwith he believed Holmes was being treated unfairly and this might cause her to retire, Ledwith retorted "that's the idea."[21] The second instance of direct evidence occurred when, "at the first meeting [ ] Holmes ever had with then new EPIC Director James Mavromatis, he asked her why she did not just retire."[22]

██ Because Plaintiff has failed to produce "substantial evidence of pretext," the Court will look to the "stray remarks" framework set forth in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996). *See Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 405 (5th Cir.2001) (discussing the Fifth Circuit's "stray remarks" jurisprudence in light of recent Fifth Circuit and Supreme Court cases). Under the *Brown* standard, "for comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.' " *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir.1999) (quoting *Brown*, 82 F.3d at 655).

Here, the Court finds the remark fails to meet three of the requisite four elements. Plaintiff cannot show that Ledwith's remark is ultimately related to any of Defendant's alleged discriminatory actions. It would require a significant leap to infer that the comment suggested Ledwith wanted Plaintiff to retire due to Plaintiff's age; but, even if it did, Ledwith's comment was remote in time and also involved a person not involved in the employment actions at issue. From the events in issue, Ledwith allegedly made the remark in the summer of 2001. The evidence shows Ledwith was about to retire and did not want to lose the GS–15 position occupied by Plaintiff to the EPFD. Once Ledwith retired in October 2001, he was not involved in any subsequent employment decisions regarding Plaintiff. In addition, there is no indication that Ledwith's comment had any effect on the alleged delay in funding Plaintiff's transfer to headquarters. Plaintiff has thus failed to adduce direct evidence of discrimination.

Although it is unclear from Plaintiff's response to which employment decisions she feels Ledwith's alleged comments apply to, it is clear the comments do not rise to the level of direct evidence of discrimination. Having reviewed all of the evidence in this case, the Court finds that an inference is required to find a relation between the discriminatory animus found in the statement and the Plaintiff's alleged discriminatory treatment.

C. *Modified McDonnell Douglas Analysis*

1. Modified McDonnell Douglas Framework

██ Because Plaintiff has failed to produce direct evidence of age discrimination, the Court will apply the "integrated" or "modified *McDonnell Douglas*" ap-

---

21. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Appendix, Statement of Facts, Rec. No. 29, p. 20.

22. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Appendix, Statement of Facts, Rec. No. 29, p. 20. Plaintiff does not supply the Court with the date this statement was allegedly made on in either her Declaration or Response.

proach to her age discrimination claims. *See Machinchick*, 398 F.3d at 352; *see Rachid*, 376 F.3d at 311. Pursuant to this integrated approach, a plaintiff must demonstrate a prima facie case of discrimination prohibited by the ADEA. *Machinchick*, 398 F.3d at 352. The defendant must then articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff. *Id.* If the defendant meets its burden of production, the plaintiff must thereafter offer sufficient evidence to create a genuine issue of material fact

> either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of the discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.

*Id.* (quoting *Rachid*, 376 F.3d at 312). Significantly, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for discharge. *Little*, 924 F.2d at 97. "We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue." *Id.* Moreover, "the existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Id.* "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. American Airlines*, 851 F.2d 1503, 1507–08 (5th Cir.1988) (internal citations omitted).

2. Court's Analysis

Defendant's first argument is that Plaintiff cannot satisfy the "adverse employment action" or "similarly situated" elements required to establish a prima facie case of age discrimination. As discussed in regard to Plaintiff's gender discrimination claim, none of Plaintiff's actions qualify as an "adverse employment actions." In addition to arguing she has direct evidence of age discrimination, Plaintiff counters Defendant's assertion that the Charter was the reason for her rotation out of the RAS Chief position was simply pretext. In addition Plaintiff argues age was at least a "motivating factor" in the decision to remove her from the Chief RAS position. The Court finds that Plaintiff does not establish her age was a motivating factor in the Defendant's decisions.

Although Plaintiff's failure to establish an adverse employment action is fatal to her prima facie case, the Court next considers whether Plaintiff has produced evidence that the Defendant replaced her with an individual under the age of 40; replaced her with someone over the age of 40, but younger than Plaintiff; or otherwise discharged her due to her age. *See Bodenheimer*, 5 F.3d at 957; *Fields v. J.C. Penney Co.*, 968 F.2d 533, 536 & 536 n. 2 (5th Cir.1992). Plaintiff has not presented any evidence that the Defendant replaced her with an individual under the age of 40 or someone over 40 years of age but younger than Plaintiff. In the absence of any such evidence, the Court must assume Plaintiff hopes to establish the final element of her prima facie age discrimination claim by relying on evidence that the agen-

cy "otherwise discharged" Plaintiff because of her age. In this regard, Plaintiff again fails to direct the Court to evidence which would support a finding that the Plaintiff was "otherwise discharged" because of her age. After reviewing the pleadings and attached exhibits, the Court finds Plaintiff has not produced evidence that anyone was actually "similarly situated."

To establish a claim of disparate treatment, Plaintiff must show the agency gave preferential treatment to a younger employee under nearly identical circumstances. *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304–05 (5th Cir.2000); *Little*, 924 F.2d at 97. There is no evidence in the record to support a finding that anyone younger received preferential treatment. Accordingly, the Court concludes that Plaintiff has failed to establish a prima facie case of age discrimination under the ADEA.

For essentially the same reasons as gender discrimination, even assuming Plaintiff could establish a prima facie case of age discrimination, Defendant has established a legitimate nondiscriminatory reason for its employment actions. Applying the modified *McDonnell Douglas* standard, Plaintiff again cannot show the Defendant's reason was pretext or that age even served as a motivating factor.

## VI. RETALIATION

### A. Legal Standard

■ As well as prohibiting employment discrimination, Title VII proscribes retaliation against an employee because he opposes an unlawful employment practice. The *McDonnell Douglas* burden-shifting scheme which applies to Title VII disparate treatment claims also applies to claims an employer retaliated against an employee for engaging in activities protected by Title VII. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983). The *McDonnell Douglas* framework similarly applies to claims that an employer retaliated against an employee for challenging employment practices the ADEA and ADA prohibit. *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 260 (5th Cir.2001) ("Retaliation claims are nothing more than a protection against discrimination based on the employee's exercise of a right to charge, testify, assist, or participate in a protected activity under the ADEA."); *Sherrod v. American Airlines*, 132 F.3d 1112, 1122 (5th Cir.1998) (finding the district did not err by applying the *McDonnell Douglas* burden-shifting analysis to unlawful retaliation claim under the ADA or ADEA).

Thus, under *McDonnell Douglas's* framework, once a plaintiff establishes a prima facie case of unlawful retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Long*, 88 F.3d at 304; *McMillan*, 710 F.2d at 1116. If the defendant introduces evidence which, if true, would permit the fact finder to conclude that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question: whether the defendant unlawfully retaliated against the plaintiff.[23] In other words,

---

23. *Long*, 88 F.3d at 304; *McMillan*, 710 F.2d at 1116. As the *Long* Court explained, the ultimate issue in an unlawful retaliation case *(i.e.,* whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII) initially seems identical to the third element of the plaintiff's prima facie case *(i.e.,* whether a causal link exists between the adverse employment action and the protected activity). 88 F.3d at 305 n. 4. However, the ultimate issue and the third element of the plaintiff's prima facie case carry distinct burdens of proof. *Id.*

the plaintiff must " 'adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation.' " *Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir.2001) (quoting *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998)).

To establish a prima facie case of retaliation, the plaintiff must demonstrate that: (1) he engaged in an activity protected by Title VII or the ADEA; (2) he was subject to an adverse employment action; and (3) there is a causal link between the plaintiff's participation in the protected activity and the adverse employment action. *Mato v. Baldauf,* 267 F.3d 444, 450 (5th Cir.2001). Here, in contrast to Title VII's substantive anti-discrimination provision, "actionable retaliation is not limited to so-called 'ultimate employment actions' " such as hiring, granting leave, discharging, promoting, and compensating. *Burlington Northern,* —— U.S. at ——, 126 S.Ct. at 2411. Nonetheless, Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at ——, 126 S.Ct. at 2414–15. Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at ——, 126 S.Ct. at 2415 (internal quotations omitted). It is not Title VII's purpose to "set forth a general civility code for the American workplace." *Id.* at ——, 126 S.Ct. at 2415 (internal quotations omitted). Rather, Title VII's anti-retaliation provisions seek to prevent an employer from interfering with an employee's unfettered access to the legislation's remedial mechanisms. *Id.* at ——, 126 S.Ct. at 2415. "It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at ——, 126 S.Ct. at 2415.

While the Court must evaluate the materiality of an alleged retaliatory action from the standpoint of a reasonable employee, using an objective standard, it must bear in mind that the significance of any given act of retaliation will often depend on the particular circumstances. *Id.* at ——, 126 S.Ct. at 2415. In short, "context matters." *Id.* at ——, 126 S.Ct. at 2415. Finally, the standard discussed above does not require a reviewing court or jury to consider the nature of the discrimination which led to the filing of retaliation charges. *Id.* at ——, 126 S.Ct. at 2415. "The standard is tied to the challenged retaliatory act, not the conduct that forms the basis of the Title VII complaint." *Id.* at ——, 126 S.Ct. at 2416.

### B. The Parties' Arguments

Defendant argues Plaintiff cannot establish a *prima facie* case of retaliation be-

---

The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision. In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.

The standard for establishing the "causal link" element of the plaintiff's prima facie case is much less stringent.... A plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the "causal link" element of a prima facie case. *Id.* (internal citations and quotations omitted).

cause she was not subjected to an adverse employment action after she complained of discrimination. Further, she cannot establish a causal connection between any alleged adverse employment action and her claims of retaliation. Additionally, even if the Plaintiff could establish a prima facie case of retaliation, Defendant contends Plaintiff cannot show that the Defendant's proffered explanation was a pretext for retaliation.

Plaintiff responds that Defendant's assignment of Plaintiff to various unofficial positions following her removal as RAS Chief constituted materially adverse actions. Further, Plaintiff argues there is a clear temporal connection between the filing of her EEO and workers compensation claims and her transfers, which establish a causal connection between Plaintiff's protected activity and the adverse employment action.

### C. Court's Analysis

Upon review of the evidence, the Court concludes Plaintiff has not provided proof from which a reasonable jury could find that Plaintiff established her prima facie case of retaliation. Plaintiff cannot demonstrate she was subject to an adverse employment action or a causal link between the Plaintiff's participation in the protected activity and the alleged adverse employment action Also, as Defendant has met its burden of production, the burden returns to the Plaintiff, who cannot show Defendant's proffered nondiscriminatory justification is merely a pretext for the alleged retaliation.

### 1. Adverse Employment Action

█ The Court finds Plaintiff cannot create a genuine issue of fact that her transfer from the RAS Chief position or any subsequent transfer qualify as an adverse employment action under the standard adopted by *Burlington Northern.* As previously discussed, the Supreme Court in *Burlington Northern* held that retaliation can occur only where "retaliation produces an injury or harm." *Burlington Northern* at ——, 126 S.Ct. at 2416. In addition, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at ——, 126 S.Ct. at 2415 (internal quotations omitted). In her first agency complaint, Plaintiff alleged that because of age, sex and reprisal, she was discriminated against when DEA officials rotated her from her position as Chief of RAS at EPIC. However, Plaintiff was occupying a term position and knew after she assumed the job that the RAS Chief was a rotational position. She was notified that, under the Principals Accord, the other agencies wanted to place one of their employees in that position to establish a managerial presence. During the time Plaintiff was at the EPFD, it is undisputed that she remained classified as a GS-15, receiving the same pay and benefits as she did previously. In addition, Defendant admitted she worked fewer hours at the EPFD than at EPIC.[24] The Court finds that this does not represent the type of harm that qualifies as an "materially adverse" action under the retaliation standard.

As to Plaintiff's other allegations of discrimination while in subsequent positions, Defendant submits that Plaintiff's transfers to temporary assignments did not

---

**24.** Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Appendix, Statement of Facts, Rec. No. 24, Ex. 7, pp. 83–84.

amount to an adverse employment action. In support, Defendant argues:

(1) she suffered no loss of pay or benefits in the temporary assignment as Executive Assistant to Deputy Director (or at any time alleged in her complaint); (2) during the entire time she complaints she continued to receive the salary and benefits of a GS–15–10, which in 2002–2003 was approximately $123,000; (3) during this time, she received the United States Attorney's Award from the District of Connecticut; (4) she received an award by the DEA for her contribution in the filed of drug law enforcement; (5) although Plaintiff was not supervising other employees, she attended executive meetings and reported to the Deputy Director. The Deputy Director was a Senior Executive Staff position; (6) according to an Affidavit by Bill Childress, Chief R & S, he and Plaintiff worked in forming a counterintelligence research plan after September 11, 2001; and (7) she additionally worked on MOUs for the Agency which included EPIC's agreements with both state and federal agencies and on FOIA requests. Plaintiff acknowledged MOUs were important to EPIC.[25]

For the reasons previously discussed in section IV.B.1 of this Order dealing with adverse employment discrimination in the context of Title VII, the Court similarly concludes Plaintiff did not suffer a "materially adverse employment action" under the *Burlington Northern* standard. *See Burlington Northern* at ——, 126 S.Ct. at 2415. Plaintiff presented no objective evidence that the reassignments equated to a demotion or any objectively worse position. None of Defendant's actions could rise to the level that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Accordingly, Plaintiff cannot show her pri-

ma facie case of retaliation and her claim fails.

### 2. Causal Link

▇▇▇▇ Next, although Plaintiff argues there is a clear temporal connection between the timing of her EEO complaint and workers' compensation claims and the Defendant's purportedly adverse employment actions, the Court finds the facts do not support this contention. After a careful review, the Court finds no causal connection between the filing in 2002 and transfer to DEA Headquarters. An independent Career Board approved Plaintiff's transfer to Headquarters. There is absolutely no indication that the Career Board knew of Plaintiff's EEOC complaints. In addition, the Court finds no causal connection between any protected activity surrounding the discrimination Plaintiff alleged in 1994 and her alleged adverse actions concerning discrimination in 2002. The eight-year gap between the two actions is too attenuated to infer a causal link. As to Plaintiff's allegations regarding the temporal connection between the problems attaining travel money and her EEO claims, again, the Court finds the facts cannot support the claim. Defendant showed that Mavromatis granted her a 45–day extension, the only amount he could approve. Further, Defendant demonstrated that Mavromatis had no authority regarding the timing of the approval of the transfer funds.

### 3. Legitimate, Non–Discriminatory Reason

Lastly, even if the Court were to find Plaintiff sufficiently stated a prima facie claim of retaliation, the Court finds Defendant has come forward with a legitimate, non-discriminatory reason for its actions. Plaintiff must now produce evidence suffi-

---

**25.** Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Rec. No. 34, p. 7.

cient to persuade the fact finder at trial that, "but for" protected actions, the Defendant would not have taken the adverse employment actions. *See Long*, 88 F.3d at 305 n. 4; *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir.2005). To survive Defendant's motion for summary judgment, Plaintiff's evidence in this regard must be sufficient to allow a reasonable jury to return a verdict in her favor. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Merely colorable or not significantly probative evidence will not suffice. *Id.* After examining Plaintiff's evidence, the Court finds Plaintiff's evidence falls far short of the mark.

Specifically, Defendant presents evidence that the Charter already provided that the RAS Chief was a rotation position and the Principals Accord merely modified the term limits. Further, in order to accommodate the needs of the DEA and Plaintiff, the DEA assigned Plaintiff to temporary positions. After the Plaintiff's temporary stint with EPFD, Ledwith brought Plaintiff back to EPIC because he did not want EPIC to lose the GS–15 position. Finally, Mavromatis had no authority regarding the timing of the approval of the transfer request. The Court finds Defendant established legitimate, non-discriminatory reasons for all of its employment actions. Plaintiff argues that the stated reasons are merely pretextual. However, as previously discussed, the Court finds that Plaintiff has not produced sufficient evidence to rebut the Defendant's reasons.

After due consideration, the Court concludes that no reasonable jury could find that the agency retaliated against Plaintiff for filing her EEOC Complaint. The Court will accordingly grant Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

## VII. HOSTILE WORK ENVIRONMENT

### A. Prima Facie Case

To establish a prima facie case of hostile environment, the employee must produce evidence that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the employees' membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir.2001). "In determining whether a working environment is hostile or abusive, all circumstances must be considered, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000) *(quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "The Plaintiffs must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir.2003). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (internal citations omitted).

"[W]here the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim," the Plaintiff need not establish the fifth element. *Celestine*, 266

F.3d at 353–54; *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In that case, the plaintiff need only prove the first four elements of the hostile work environment prima facie case to subject the employer to vicarious liability. *Id.*

## B. The Parties' Arguments

Plaintiff summarizes the facts and occurrences comprising her hostile work environment claim as follows:

> First, Plaintiff was moved out of her position as Chief in an arbitrary and demeaning manner. Then, after being assigned to the EPFD and feeling useful, and being told that her tour at EPFD had been extended one year, she was abruptly told that she had to report back to EPIC. This had been clearly designed to get her to retire. After reporting back to EPIC, she was assigned menial and degrading jobs that were below her level, and never given any kin of official action, job description, performance standards or performance evaluations. Then, after being transferred to headquarters, her travel monies were not released so that she could plan her move. Then, once she felt she had not choice but to retire, she was told that she had to either be retired or be AWOL and subject to disciplinary ramifications.[26]

Plaintiff further avers that "[a]ll of these actions, while perhaps not severe when taken separately, certainly are pervasive." *Id.* Defendant counters there is no evidence that any of the incidents complained of are even remotely related to Plaintiff's protected status. Further, Defendant argues the incidents as a whole are neither severe nor pervasive enough to satisfy the applicable *Harris* test.

## C. Analysis

▮▮▮▮▮▮ The Court finds Plaintiff has failed to produce sufficient evidence that Defendant's alleged actions constituted severe or pervasive harassment. Hostile work environment claims must be based on severe and pervasive conduct so, as the Court has instructed, that Title VII does not become a general civility code but instead "filter[s] out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *See Faragher,* 524 U.S. at 788, 118 S.Ct. 2275. Here, there is not sufficient evidence of the demeaning and intimidating atmosphere that Title VII is meant to protect against. As previously discussed, the Defendant did not demote Plaintiff; nor did it reduce her salary or benefits. In addition, none of the alleged acts implicate Plaintiff's age or gender, much less demonstrate some form of discriminatory actions by Defendant.

Finally, Plaintiff has not shown evidence that any of the complained-of actions by Defendant affected a term, condition, or privilege of her employment. Accordingly, Plaintiff has failed to submit evidence that Defendant's actions were so extreme as to create a hostile or abusive work environment.[27] Plaintiff's hostile work environment claim, as with her other claims under Title VII and ADEA, fails to survive De-

---

26. Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J., Rec. No. 29, pp. 23–24.

27. In the alternative, Defendant submits that it is entitled to dismissal of Plaintiff's hostile work environment claim because Plaintiff failed to properly exhaust her administrative remedies. As discussed in Section III of this Order, the Court agrees with Defendant and finds that Plaintiff failed to take advantage of the mechanisms to report the alleged incidents of harassment, thereby depriving Defendant of the opportunity to take any necessary corrective actions.

fendant's motion to dismiss and motion for summary judgment.

## VIII. Constructive Discharge

In section III.C. of this Order, the Court found that Plaintiff failed to exhaust her administrative remedies regarding her constructive discharge claim. Assuming, *arguendo*, that Plaintiff sufficiently exhausted her administrative remedies, the Court nonetheless finds Plaintiff has failed to establish that her decision to voluntarily retire was a constructive discharge. To prove constructive discharge, Plaintiff must establish that the working conditions at her job "were so intolerable that a reasonable employee in her position would feel compelled to resign." *Webb v. Cardiothoracic Surgery Assoc. of N. Tex.*, 139 F.3d 532, 539 (5th Cir.1998). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.2001).

As explained in section VI., the Court finds Plaintiff does not raise an issue of material fact on her hostile work environment claim. Therefore, the Court finds Plaintiff has not proved the "greater degree of harassment" required to satisfy the elements of a constructive discharge claim. The Court concludes that Plaintiff has not pleaded facts exhibiting she was subjected to intolerable working conditions. Accordingly, Plaintiff's claims should be dismissed.

## IX. Defendant's Objections to Plaintiff's Summary Judgment Proof

In ruling on this motion, the Court considered "Defendant's Objections to Plaintiff's Summary Judgment Evidence" [Rec. No. 31] and "Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence" [Rec. No. 32]. The Court **DENIES** Defendant's objections to the summary judgment evidence the Court relied upon and **DENIES AS MOOT** the objections to evidence upon which the Court did not rely.

## X. Conclusion

"The very mission of the summary procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *John Hancock Mutual Life Ins. Co. v. Johnson*, 736 F.2d 315, 317 (5th Cir.1984). For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's gender and age discrimination claims; retaliation claims; hostile work environment claims, and constructive discharge claims. Accordingly the Court enters the following orders:

**IT IS THEREFORE ORDERED** that "Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" [Rec. No. 24] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**